COUNTY OF COLE, Appellant, v. CENTRAL MISSOURI TRUST COMPANY.

In Banc, January 4, 1924.

1. **CONTRACT: Between County and Depository: Shown by Record.** The county, in an action against a trust company to recover interest on daily balances of county money deposited with it, based on a record contract between the county court and the trust company, which it is claimed shows that the trust company was selected as county depository and that its bid to pay a certain rate of interest was accepted, cannot recover, where the record fails to show that its bid was accepted, that the order directing a certain fund to be transferred to it was made before the bids were opened, that such fund was not an "equal part" of the county funds, and otherwise fails to show that the proposition made by the trust company was accepted by the county court in the form tendered.

County of Cole v. Trust Co.

*Held*, by WALKER, J., dissenting, that the validity of the contract is admitted by the answer which admits that defendant was selected by the county court as the depository of the fund, that defendant accepted the trust thus imposed, that the money belonging to the fund was turned over to defendant as the county depository under the order of the court, and that said fund thus deposited was kept and used by defendant during the term of the contract; and as the record entries sufficiently show the nature of the contract, parol evidence to vary its terms was inadmissible.

2. ———: ———: **Impeached Record: Opens Door to Evidence of True Facts and Actual Contract.** The plaintiff, the county, in a suit by it against a trust company to recover interest on daily balances of county money alleged to have been deposited with it as county depository under a valid contract, having impeached its own record regarding the date of the filing of defendant's bid, is in no position to object to evidence showing when in fact the bid was filed——for instance, where neither the bid itself nor the record showed when the bid was filed, and four years later a record entry was made showing the bid was filed on May 7, 1917, and the bid then inscribed with a file mark, May 7, 1917, the county is in no position to object to evidence showing that the bid was presented to the county court on February 15, 1917—two months before there was any advertisement for bids and before the county court could even consider the letting of county moneys to depositories. And since the plaintiff showed that the record did not speak the truth and showed that the county court did not make the contract sued on, there is no legal reason why the defendant should not be permitted to show the real contract between the parties—not for the purpose of enforcing it, but for the purpose of showing that the parties did not make the contract sued on and that the county profited by a departure from the law.

*Held*, by WALKER, J., dissenting, that, as the orders concerning the transaction were made contemporaneously with the county court's action, the fact that these orders were not formally entered upon the record, but were kept on file by the clerk until some time after the consummation of the contract, in no wise affects the validity of the transaction.

3. ———: ———: **Presumption of Regularity.** Certain presumptions may be indulged in favor of the regularity of the proceedings of the county court, and especially when it is attempted to sustain by its record the validity of a transaction which has been acted on; but such presumptions are not to be indulged where the county attempts to nullify a transaction upon which the county shows the parties acted to their mutual satisfaction, and to the definite benefit of the county, long after the matter was a closed incident so

far as the performance of the arrangement was concerned. In such case, where the county attempts to recover upon a bare technicality and an alleged specific contract, and not on the justice of its claim, no presumptions of regularity are indulged, but it must prove by its record that the specific contract was made in the manner and form required by the statutes.

*Held*, by WALKER, J., dissenting, that defendant's answer admits that the contract between it and the county was made with it in the manner prescribed by law, and evidence of any other transaction was inadmissible.

4. ———: ———: Estoppel. A county may be estopped to deny a contract into which it entered illegally. Especially is the county estopped to deny the contract where it has received the benefit of the illegal contract into which it actually entered—a benefit far in excess of what it would have received if it had proceeded according to the requirements of the statute—and has retained that benefit, and the arrangement was acted upon in good faith by both parties and was completely performed by the defendant to its own detriment.

*Held*, by WALKER, J., dissenting, that the public, in this case the county, cannot be estopped by the *ultra vires* acts of its officers; and the county court could enter into no contract for the letting of public money which relieved the county depository from its statutory obligation to pay interest on daily balances.

5. ———: ———: Interest on Daily Balances: Instead Agreement to Pay Interest on Time Certificates: Estoppel. The county had issued $300,000 of five per cent road-construction bonds, which it could not sell because of some irregularity in connection with their authorization. At the time the county court had let contracts for road construction amounting to $50,000, but had no money to meet the contracts, because the bonds could not be sold. Thereupon the defendant trust company offered to take the entire bond issue at par, provided (1) the county would refund the bonds at 4.75 per cent interest presumably free from the technical objection to the first issue, and (2) it should become the depository of all county money pertaining to the road-construction fund. In order to avoid the payment of interest on daily balances, as required by statute, defendant agreed to pay 4.75 per cent interest on the money deposited with it provided the money so deposited were put in the form of time certificates, and the certificates were arranged to fall due at such times as the county estimated money would be needed to pay road contracts. In order to give the arrangement an appearance of regularity, the trust company in February presented an undated letter to the county court in which it "bids 4¾ per

cent annual interest for one equal part of the county money advertised to be let by your body Monday, May 7, 1917." There had then been no advertisement for bids, nor under the statute could the court then have considered the letting of county funds to depositories; but thereafter and on April 12th the county advertised for bids and recited in the notice that "said county funds will be divided into two equal parts, and sealed proposals for one or both of said parts will be received on or before the first Monday, the 7th day of May, 1917." An order of the court of May 7, 1917, recited that it was ordered that the trust company "be and is hereby designated the county depository for all money belonging to the road-construction fund of the county," the said company "being found by the court to be the highest and best bidder for said funds." The next order was dated May 9th and recited that "now on this day the court proceeds to open bids as per advertisement for county depository" and finding a certain bank to be the highest and best bidder "said bank is hereby declared to be the county depository for all county funds except the moneys belonging to the road-construction fund," and the county treasurer was ordered to transfer to the trust company all moneys belonging to that fund. The letter from the defendant was not a sealed bid, it was for the first time marked filed four years after it was presented and then for the first time an order was made entering upon the record the proposal as a "bid." The arrangement between the county court and the defendant made in February, 1917, was carried out in good faith, and if the money had been needed by the county for the construction of roads as was contemplated at the time it was made the county would have received a far greater amount of interest at 4.75 per cent on the time certificates than it would have received on daily balances at 2.15 per cent, the prevailing rate; but after the World War came on, the county could not make contracts for road construction as rapidly as it had expected, and after the certificates became due considerable sums in the checking account were left on deposit with defendant and were not used by the county for some time, and it is for 4.75 per cent interest on those deposits in the checking account, as interest on daily balances on money deposited with a "county depository," that the county sues; in other words, the county now contends that under the statute defendant was a "county depository," and that all the road-construction fund in its hands on any particular day should be considered a daily balance, and that it should be charged with 4.75 per cent on the daily balances, less the interest it has paid on the time certificates. *Held*, that the county is estopped to deny the validity of this illegal contract with defendant, because (1) through the aid of defendant it was enabled to nego-

302 Mo. Sup.—15.

tiate the $300,000 of road bonds, which it otherwise was unable to dispose of; (2) it negotiated them at a lower rate of interest than the original bonds bore; (3) it received more interest from the time certificates than it would have received if the money had been let to the highest bidder; and (4) because the arrangement has been acted upon in good faith by both parties, and completely performed by defendant to its detriment; and while the contract was illegal and a nullity, so was the contract which the county tried to prove.

*Held*, by WALKER, J., dissenting, first, that this illegal agreement constitutes no defense to plaintiff's action, and evidence to establish it was inadmissible; and, *second*, estoppel applies only to irregularities of county courts, and not to their *ultra vires* acts.

Appeal from Cole Circuit Court.—*Hon. John G. Slate*, Judge.

AFFIRMED.

*Calfee & Westhues* and *H. J. Westhues* for appellant.

(1) The only way a county court can select a depository for county funds, is by complying with Article 8, chap. 86, R. S. 1919. Harris v. Langford, 277 Mo. 527. (2) It was the duty of the county court to substantially comply with said Article 8 in letting the county moneys, and in so doing the county court had no right to connect the letting of the moneys and the selecting of a county depository with any other proposition whatever. Barratt v. Stoddard County, 246 Mo. 501. (3) A substantial compliance with said Article 8 is sufficient. 15 C. J. 549, 550, sec. 243, note 7; Barratt v. Stoddard County, 246 Mo. 501; Harris v. Langford, 277 Mo. 527. (4) In this case the county court complied with the law in selecting depositories for county funds. It ordered the clerk to advertise. The clerk advertised for bids. Bids were received. The money was let in two parts, Bond for depository by defendant was filed and

approved.   Money was ordered transferred to defendant.   Defendant acted as depository.   This is a substantial compliance with the law.   Article 8, chap. 86, R. S. 1919.   (5)   Any oral agreements and understandings, if any were had, as alleged in the second part of defendant's answer and the entire matter of defense alleged in the second part of defendant's answer are no defense in this case.   (a)   Because the county court can only make contracts in writing.   (b)   Because the county court can speak only by and through its record.   (c) Because if any such understanding was had as alleged in defendant's answer, it was contrary to law and not binding on the county.   Barratt v. Stoddard County, 246 Mo. 501; Morrow v. Pike County, 189 Mo. 610; Harris v. Langford, 277 Mo. 527.

*Dumm & Cook* for respondent.

(1)   Defendant's objection to the introduction of any testimony on the part of the plaintiff should have been sustained, for the reason that the petition wholly fails to state a cause of action against the defendant. The petition charges that the defendant submitted a bid for one equal part of the county money advertised to be let by the county court on May 7, 1917, and then alleges that on said date the county court made an order of record designating defendant as the county depository for all money for the county belonging to the "Road Construction Fund" for a period of two years.   Assuming, for the present purpose, that these allegations of the petition were true, it appears on the face of the petition that the bid was for one thing and the designation or acceptance was for another and a different thing; and the petition, therefore, failed to plead a contract or agreement between the county through its county court, on the one part, and the defendant on the other, and failed to state a cause of action against the defendant. 13

C. J. pp. 265, et seq.; Robinson v. Railroad, 75 Mo. 494; Strange v. Crowley, 91 Mo. 287; Taylor v. Von Schraeder, 107 Mo. 206; McLean v. Association, 64 Mo. App. 55; Cangas v. Rumsey Mfg. Co., 37 Mo. App. 297. (2) The trial court should have sustained defendant's demurrer, offered at the close of the plaintiff's case. Even if the petition could be held to state a cause of action, there was a total variance between the pleading and the proof. The petition alleged that defendant submitted a bid for one equal part of the county money advertised to be let by the county court. The record introduced by plaintiff showed that defendant was designated the county depository for all money belonging to the "Road Construction Fund" for a period of two years, without either pleading or proving that the money belonging to the "Road Construction Fund" constituted one equal part of the money advertised to be let. Since plaintiff sought to rely upon a contract, made up of the bid and the acceptance, it was incumbent on it to prove such a contract; and this it wholly failed to do. Authorities supra; Chapin v. Cherry, 243 Mo. 375, 401; Stone v. Trust Co., 150 Mo. App. 331, 344; Curry v. Greffet, 115 Mo. App. 364, 368; Gaus & Sons Mfg. Co. v. Chicago Lumber & C. Co., 115 Mo. App. 114. (3) There being no contract established by the record entries of the county court, parol evidence was admissible for the purpose of showing what the arrangement and agreement between the county court and the defendant really were. Riley v. Pettis County, 96 Mo. 318, 321, 322; Ray v. Woodruff, 168 Ky. 563, 567; Ferguson v. Rafferty, 128 Pa. 337, 6 L. R. A. 33; Gilbert v. Bank, 160 Pac. (Okla.) 635; Klueter v. Brew. Co., 143 Wis. 347, 32 L. R. A. (N. S.) 383; 22 C. J. pp. 1084, 1144. (4) The county, through its county court, having accepted from the defendant interest on time certificates of deposit to the credit of the "Road Construction Fund," without objection on its or their part, is now estopped from claiming or assert-

ing that it is entitled to interest on daily balances. 21 C. J. pp. 1206, 1215; Sparks v. Jasper County, 213 Mo. 243; Simpson v. Stoddard County, 173 Mo. 466.

WHITE, J.—Action to recover interest claimed to be due from defendant as county depository.

The plaintiff filed its suit in the Circuit Court of Cole County, April 6, 1920, alleging that at the May term, 1917, it advertised for bids from banking corporations, etc., for the privilege of being selected as county depository; that said bids were opened at said May term, and the defendant, having submitted a bid of four and three-fourths per cent annual interest for one equal part of the county money advertised to be let on that day, the county court designated the defendant as a depository for all the money of the county belonging to the road construction fund, defendant being the highest and best bidder for said fund; that defendant filed its bond in accordance with the statute, and received from the county treasurer money of the county in the sum of $266,487.17; that defendant accepted the money May 10, 1917, and from that date to July 1, 1919, acted as depository. The petition sets out the amount of deposits to the credit of the county with defendant during various periods extending from May 10, 1917, to July 1, 1919, and alleged that the amount of interest computed upon the daily balances, as provided by the statute, during the different periods, was $15,963.61; that defendant at divers times had paid the interest by placing to the credit of the county different sums of money amounting to $8086.79, leaving a balance due of $7876.82, for which the defendant asked judgment.

The defendant makes here some objections to the sufficiency of the petition. It is unnecessary to consider those objections, as the questions thus raised will be considered below in connection with the record introduced by plaintiff for the purpose of making out a case.

The answer of the defendant and the evidence offered and admitted by the court in support of the answer

shows that in February, 1917, long before the county was authorized by law to select at the May term, 1917, a depository for its funds, the county was in difficulty on account of $300,000 bonds which has been voted by the people for the construction and maintenance of roads in Cole County. Those bonds could not be sold because of some irregularity in connection with their authorization. They bore five per cent interest. The county court had let contracts for road construction amounting to nearly $50,000, but had no funds on hand to meet the contracts because no bids were offered when they attempted to sell the $300,000 bonds.

Thereupon the defendant, February 15, 1917, offered to take all the $300,000 issue of bonds, provided the county would refund them at four and three-fourths per cent interest with other bonds presumably free from the technical objection to the first issue. This reduced rate of interest on the refunding bonds—manifestly to the advantage of the county—was arranged upon condition that the defendant should become the depository of all the money in the road construction fund. In order to avoid the payment of daily balances as required by statute, the defendant agreed to pay four and three-fourths per cent, which was far in excess of the rate then prevailing, provided the money on deposit would be represented by time certificates. The county was to estimate the different times at which money would be needed to pay on road contracts; the time certificates of deposit were arranged to fall due at such time, and it was understood that the defendant was not to pay interest on the checking account. In this way, if the money had been required by the county as was contemplated when the arrangement was made, it would have received a far greater amount of interest at the rate of four and three-fourths per cent on the time certificates than it would have received on daily balances at the prevailing rate of 2.15 per cent. It happened, however, that the war came on, the county could not make contracts for con-

struction as rapidly as it expected, and after the time certificates became due considerable sums in the checking fund were left on deposit with the defendant and were not used by the county for some time.

It was shown that at the time the defendant became the depository the county was receiving 2.15 per cent on daily balances. Members of the county court testified that it was impossible to secure a greater rate than that on daily balances, and the interest actually paid by defendant under the arrangement mentioned was several hundred dollars more than the county would have received if the county had received from defendant the prevailing rate of 2.15 per cent on daily balances. It is claimed by the defendant, and the evidence shows without contradiction, that this arrangement was carried out; that it was very much to the advantage of the county, that no objection was made to it until in 1919 when the new county court was elected and it was discovered that the statute providing for interest on daily balances had not been complied with, and this suit was brought.

All this evidence was objected to by the plaintiff. The objection was overruled by the trial court, and that ruling constitutes the main assignment of error presented by the appellant. The record and the evidence in relation to the contract which the respondent seeks to establish will be considered below.

This outline of the facts as shown by the record is not complete, because it will be more convenient to consider the issues and the record in connection with the points raised.

The judgment of the trial court was for defendant and the plaintiff appealed.

I. The plaintiff plants its case upon the doctrine that the county court speaks only by its record. It insists upon the strictest application of the rule and strenuously argues that no evidence can be heard to supplement the record.

Record Contract.

Apply that principle to the evidence offered by the plaintiff in making out his case.

The statute, Section 9582, requires that the county court in letting the funds of the county to depositories, "shall, *by order of record,* divide said funds into not less than two nor more than ten *equal parts,* and the bids herein provided for may be for one or more such parts."

The section then provides that notice shall be. published and outlines the procedure when bids are received.

Section 9584 provides that at the May term in each year the county court shall open the bids, and *"cause each bid to be entered upon the records of the court,"* and select as county depository the corporations or individuals, "whose bids respectively made for *one or more of said parts of said funds* shall in the aggregate constitute the largest offer for the payment of interests per annum for said funds."

The section then provides for interest to be paid on daily balances. The evidence offered by plaintiff I mention in its logical order:

The advertisement for bids published beginning April 12, 1917, stated that the county court desired to select depositories for the ensuing two years, and continued: "Said county funds will *be divided into two equal parts, and sealed proposals for one or both of said* parts will be received by the clerk of said court on or before the first Monday, the 7th day of May, 1917." The notice then said that the interest is to be computed on the daily balance and that each bid is to be accompanied by a $300 check.

The bid of the Merchants' Bank was offered. It stated that pursuant to the notice mentioned it would give 2.15 per cent per annum for one of the two equal parts proposed to be let on the 7th day of May, 1917.

The bid of the Central Missouri Trust Company, the defendant, was offered, as follows:

"To the Honorable County Court, Cole county, Jefferson City, Mo.

"The Central Missouri Company bids four and three-fourths per cent annual interest for one equal part of the county money advertised to be let by your body Monday, May 7, 1917. Enclosed find check for $300 called for in your advertisement.

"Respectfully, SAM B. COOK, president."

The proceedings of the May term, 1917, of the county court, from May 7th to May 9th, appear in the record as follows:

"May term, 1917. Monday, May 7, 1917, twenty-second day.

"At a regular term of the county court begun and held on Monday the seventh day of May, 1917, there were present Hon. I. D. Bond, P. J., J. R. Taylor, a J., A. B. Richter, sheriff, and C. A. Dirckx, clerk, when the following proceedings were had, to-wit:

"Ordered by the court that the Central Missouri Trust Company be and is hereby designated the county depository *for all money belonging to the 'Road Construction Fund'* of the county, for a period of two years, said Central Missouri Trust Company being found by the court to be the highest and best bidder *for said funds*.

"May term, 1917. Wednesday, May 9, 1917, third day.

"Court met pursuant to adjournment with all members present, when the following proceedings were had to-wit:

"*Now at this day the court proceeds to open bids as per advertisement for 'County Depository' and finding* the Merchants' Bank of Jefferson City to be the highest and best bidder, said bank is hereby declared to be the County Depository for all the county funds except the moneys belonging to the 'Road Construction Fund' for a period of two years at an interest rate of 2-15-100 per cent.

"Comes now the Central Missouri Trust Company by Howard Cook, and presents its bond as 'County Depository' for the 'Road Construction Fund' which bond

the court examines, finds sufficient and orders approved and filed.

"Ordered by the court that Peter J. Schell, County Treasurer, transfer to the Central Missouri Trust Company all moneys in his hands belonging to the 'Road Construction Fund' of the county.

"Now at this day the court proceeds to open and file bids on road and bridge work as per advertisement.

"Ordered court adjourn to nine o'clock to-morrow morning.

"I. D. BOND, Presiding Judge."

This is the entire record offered to show a contract between the plaintiff and the defendant. It will be noticed that the bids received pursuant to the advertisement were opened May 9th, and the bid of 2.15 per cent by the Merchants' Bank of Jefferson City was approved, and that bank was selected as depository for *all* the money of the county except the road construction fund.

The appellant contends that the bid of the Central Missouri Trust Company (copied above) was in response to the advertisement and was so conclusively shown by the record, because it is a bid for one of the equal parts of the money advertised—one-half the money which the county had to deposit; and that the record cannot be impeached by testimony showing that the bid was *not* in response to the advertisement.

Just here the plaintiff encounters difficulty in making out its case. The record does not show that *that* bid was accepted by the county. Let the record alone speak and it shows that on May 7th—two days before the opening of any bids in response to the advertisement —the county court selected the Central Missouri Trust Company as depository for the money *in the road construction fund*. Every entry in the record relating to the defendant refers to the road construction fund alone.

Thus the order selecting defendant is a variance from the bid for several reasons: (a) The order does not mention the defendant's actual bid, *nor any feature of it*. (b) It was made before the bids were opened; be-

fore there was any consideration or comparison of the competitive bids; before the county court knew what the bids of the county funds were; before they had any authority to select a depository. (c) The alleged acceptance is not for one equal part of the county funds, as the advertisement and the bids read, but it is the selection of a depository for the whole of one distinct fund.

Before a contract can be entered into by reason of a proposition and acceptance, the minds of the parties must meet upon *all the* terms of the contract. The rule was stated by this court in the case of State ex rel. v. Robertson, 191 S. W. l. c. 991, where this court said: "The proposition presented by the one must be accepted by the other in the form tendered; and if the acceptance omits, adds to, or alters the terms of the proposition made, then neither party to the negotiation is bound."

This is the condition if we let the record alone speak. It must be borne in mind that the plaintiff is not suing upon the contract which was acted upon and recognized by the parties, but suing upon the contract which was never recognized as valid between the parties and was never acted upon. Suppose that after that order was made the County Treasurer had refused to deposit the money with the defendant; and suppose the Trust Company had sued to compel such deposit, the answer of the County Treasurer and the County Court would have been:

"The county has made no contract with you for several reasons: first, the statute requires that before we can let the money we must *by order of record* divide it into equal parts; we must advertise for bids and *receive sealed bids* and *accept the highest bids* for one or more of such equal parts. Those things were not done. The county had no authority to make *any* contract without dividing the money into equal parts, and if it had divided it into equal parts, it had no authority to let all of any particular fund without a showing by the *record* that the money let was one of the equal parts.

"Thus the record fails to show that the county had

power to make such a contract, because the Central Missouri Trust Company was selected in defiance of the law, before it could lawfully be done, without consideration of competitive bids, at variance with the advertisement and bid, and for a fund which the county had no right to deposit in that way."

Such answer of the county court in such a suit would

**Impeached Record. Evidence of True Facts and Real Contract.** have stated a complete defense. A contract is not binding unilaterally, it must be binding upon both parties to it.

II. Further, the plaintiff impeached its own record: In the progress of the trial this colloquy occurred:

"THE COURT: I take it for granted these bids were fixed up anyhow as *a mere formal compliance*—

"MR. WESTHUES: *Of the law; sure.*

"THE COURT: Yes.

"MR. IRWIN: The county court didn't make it competitive.

"THE COURT: *The absolute proof doesn't conform to the record made out and the bids filed.*

"MR. WESTHUES: *Inconsistent with it.*

"THE COURT: Certainly it is inconsistent.

"MR. WESTHUES: Yes.

"THE COURT: The record appears all right on its face in a way, but it occurs to me there is a lot of this record made here and bids filed after everything had been settled for the purpose of making it appear and show—

"MR. WESTHUES: *That they had conformed with the law?*

"THE COURT: Yes.

"MR. WESTHUES: When in fact they had not?"

This was not an inadvertent or casual occurrence. Here is a solemn admission in open court by counsel for the plaintiff that the record, which is now claimed to import absolute verity, did not speak the truth at all, but was entered three or four days before the trial, in-

nocently enough no doubt, but for the purpose of furnishing evidence in the case.

Counsel for appellant claim that this admission relates only to the order following:

"Ordered by the court that the county clerk be and is hereby ordered to enter upon the court record all the bids on file.for the year 1917 and 1919 during May terms of said years for the county funds, as required by law, with reference to county depositories. Laws of 1915, p. 249."

But the admission relates to much more than that. The statute requires that the bids shall be entered upon the records of the court at the time they are opened and considered, so that people may know what bids have been received, but this record was made four days before the trial, February 4, 1921, nearly four years after the bids under consideration here were received and opened.

The bid of the defendant offered in evidence bore a file mark, May 7, 1917. The deputy county clerk, Charles Smith, testifying for the plaintiff, said that the file mark was put on that bid "the other day." That is, at the time the above order was made, four days before the trial. Further, Smith said that it had no file mark on it prior to that, and there was no record showing when it was presented to the county court. The record of the proceedings of the county court was signed by Presiding Judge I. D. Bond of the county court, a few days before the trial and about four years after the record was made.

Having impeached its own record regarding the date of filing defendant's bid, the plaintiff was not in position to object to evidence showing when in fact the bid was filed. This is true particularly because the plaintiff's attorney endeavored to show that the bids had been "on file all the time." That is a rather comprehensive period and the plaintiff's counsel did not designate any date to be recognized as the beginning of "all the time."

County of Cole v. Trust Co.

This record, which must import absolute verity in order to sustain the plaintiff's contract, *includes the file mark made four days* instead of four years before the day of the trial. The file mark is comprehended in the naive admission of plaintiff that those records were arranged *"for the purpose of making it appear and show"* that they had conformed to the law, *"when in fact they had not."*

The significance of this date of the presentation of the bid is apparent.

It was shown without contradiction that it was presented February 15th, two months before there was any advertisement for bids, and before the county court could even consider the letting of money to depositories, which must be done at the next May term. It was not a sealed bid as the notice required. The bid then could not have been in response to the notice, but was gotten up for the purpose of giving the appearance of regularity to the proceeding which all recognized to be irregular. It was not a bid at all, because it was not a sealed bid and was not competitive. Taking the record introduced, the admission of plaintiff's counsel, and proof of the time at which the bid really was presented, we have all the evidence presented by the plaintiff in making out its case. It fails to make out a case because it lacks two links in the chain of negotiation necessary to close the contract sued on; the bid was not in response to the advertisement, and the letting of the funds was not an acceptance of the bid. This is true even if the county court had had authority to make the contract on which it sued.

Since the plaintiff showed that the record did not speak the truth and showed that the county court did not make the contract which was sued on, there appears to be no legal reason why the defendant should not be permitted to show the real contract between the parties, the one that was acted upon,—not for the purpose of enforcing

Presumption of Regularity.

it, but for the purpose of showing that the parties did not make the contract sued on, and that the county profited by the departure from the law. Of course, certain presumptions may be indulged in favor of the regularity of the proceedings of the county court. That is especially true when it is attempted by the record to sustain the validity of a transaction which has been acted upon. But this is not that kind of a case. This is an attempt to nullify a transaction upon which the parties acted to their mutual satisfaction, as plaintiff's evidence shows, and to the definite benefit of the county, long after the matter was a closed incident so far as the performance of the arrangement was concerned. The plaintiff does not seek to recover on the justice of its claim but upon a bare technicality, because the defendant, through favorable treatment of the county, became involved in a legal snarl.

It may be said that the defendant used the money and therefore should pay for its use, according to the statute. Even if the county could recover interest computed according to the statute on money not deposited under the statute, the petition does not count on such recovery. The plaintiff seeks to recover on a specific contract which it has not proved.

III.   Respondent contends that plaintiff is estopped to deny the contract set up in the answer and proved by the defendant, and that the trial court for that reason Estoppel.   correctly admitted the evidence. This is on the theory that the county received and retained certain benefits from the contract alleged proven by the defendant:

(a)   The county, through the instrumentality of the defendant, was enabled to negotiate its road-construction bonds, when otherwise it was unable to dispose of them.

(b)   It negotiated at par the $300,000 refunding bonds at a lower rate of interest than it would have had

to pay if it had sold the original road-construction bonds.

(c) Under the arrangement it received more interest from the defendant as the repository of the road-construction fund than it would have received if the money had been let to the highest bidder under the statute, and interest paid on daily balances.

Judge Happy of the county court testified that the court was receiving 2.15 per cent from the depository at that time, and that 2.15 per cent was all it was able to get; the evidence showed that was the prevailing rate. The defendant paid 4.75 per cent; more than double—and in explanation Mr. Cook said they would not have thought of paying that rate except under the arrangement whereby they were to pay interest on time certificates and not on checking accounts. Had it not been for the intervention of the war, which delayed the construction work, the county would have received even more than it did from the depository. The defendant invested $300,000 at par in the bonds and paid four and three-fourths per cent interest. The investment, or an amount of it equal to the deposits on hand from the county, yielded nothing to the defendant because it paid the same rate of interest on the money deposited that it was receiving for the bonds.

As a general rule it is correct that circumstances and facts which would estop an individual usually do not estop a county in its official capacity. But a county may be estopped to deny a contract which it entered illegally.

The rule is stated in 21 C. J. 1215: "Where the act or contract of a municipal or quasi-municipal corporation is not one which it is without corporate power to make, but is unenforceable merely because of an irregular exercise of power, in the making or execution of it, it may be estopped to deny the validity of the contract where it has accepted the benefits thereof."

This court said, in the case of Mullins v. Kansas City, 268 Mo. 444, l. c. 459, a case cited by the appellant:

"We recognize that the modern doctrine is tending more and more toward the view that a municipality, no more than an individual, ought not to be allowed to so act towards others as to induce them to pursue a course harmful to them and then in the end refuse to comply with the promise inducing such action."

The St. Louis Court of Appeals in the case of Edwards v. Kirkwood, 147 Mo. App. l. c. 615, in speaking of estoppel by municipal corporations, said: "There is a distinction made, too, in some of the cases where the doctrine of estopel is invoked as to contracts which had been performed in good faith by one dealing either with a municipal or private corporation, and the infirmity lies in a defect of power with respect to a matter not prohibited by law."

See also Sparks v. Jasper County, 213 Mo. l. c. 243-244; Simpson v. Stoddard County, 173 Mo. l. c. 465.

Now in this case the county court had authority to loan the county's money, including that particular fund which the defendant received. The arrangement which the defendant made with the plaintiff was in form and method unlawful. The only irregularity *of which the plaintiff complains* was the arrangement for the payment of interest by departing from that statutory requirement. The county obtained a benefit by that departure, has retained it to this day, and does not seek in this proceeding to put the defendant *in statu quo*. It may be said that because this is a contract which the county court had no authority whatever to make, it was not a mere irregularity, but a nullity from the start and the county could not be estopped. The same may be said with equal propriety of the contract which the plaintiff sought to prove. The county had no authority whatever to let money to a depository except under the terms of the statute, in equal parts, and the designating of the defendant as a depository by the county court without such division by order of record was entirely without authority of the law.

302 Mo. Sup.—16.

The county having received the benefit of the illegal contract which it actually entered into—a benefit far in excess of any it would have received by a proceeding according to the statute—and having retained that benefit, the arrangement having been acted upon in good faith by both parties and completely performed by the defendant to its own detriment, the county is estopped to deny the arrangement.

The judgment, accordingly, is affirmed. *Woodson, C. J.,* and *Ragland* and *Graves, JJ.,* concur; *James T. Blair, J.,* concurs in Paragraphs I and II and the result; *Walker, J.,* dissents in separate opinion in which *David E. Blair, J.,* concurs.

WALKER, J. (dissenting).—I do not concur in the majority opinion. The facts as I glean them from the record are as follows: The county court, under Sections 9582-9586, Revised Statutes 1919, advertised for bids for the use of the county money by depositories to be selected by the court; and that such money would be let in two parts. The trust company bid four and three-fourths per cent for the use of one part of the money; its bid was accepted, and it was designated by the court as the county depository for the money belonging to the road construction fund. The company thereupon filed its bond as such depository, and the county court ordered the treasurer to transfer all of the county money belonging to said fund to the company, which was done, and the latter accepted the trust and used the funds thus transferred to it from May 10, 1917, to July 1, 1919. The county contends that the interest at the rate of four and three-fourths per cent per annum on said funds required by law to be paid by the company for the use of same should be computed on daily balances on the entire amount deposited under the law governing county depositories.

The company admits that the county court selected the former as the depository of all money belonging to the road construction fund for a period of two years

from May 10, 1917; and that on May 9, 1917, it filed a bond which was approved by the county court for the faithful performance of its duties as such depository, and that the funds belonging to the road construction fund were thereupon turned over to and accepted by it as such depository in the sum of $266,487.17; and that said funds were so kept and used by it from May 10, 1917, to July 1, 1919; and that it has paid the county for the use of said money during said period the sum of $8,086.79, which it claims is in full of the amount due the county during the period stated; it denies that it became, was or is indebted to the county for interest on said funds computed on daily balances, or that there is now due and owing by it to the county the sum of $7,876.82, or any other sum, as contended by the county.

As a further defense, designated as "Second" in the company's answer, it says its bid of four and three-fourths per cent was not in response to the county's advertisement; that the road construction fund was not a part of the county money to be let May 7, 1917; that another bank received all of the county funds let at said May term of the court; that the company became the depository of the road construction fund, pursuant to an agreement by it with the county court which began in the fall of 1916 and ended in February, 1917, by which the company, among other things, purchased the entire issue of certain bonds of Cole County in the sum of $300,000, which bonds bore five per cent interest; that by this agreement the company took up this entire issue, and the county court entered an order to retire or refund all of same by the issuance in lieu thereof of bonds of the county in a like sum bearing four and three-fourths per cent interest, and delivered them to the company at par and accrued interest in exchange for the original issue; that in addition to buying these bonds it was agreed with the county court that the company was to act as the depository of the fund arising from the sale of the bonds, which it is alleged was afterwards desig-

nated as the "Road Construction Fund," and that the company would pay interest for the use of said fund at the rate of four and three-fourths per cent on such part of same as the county deposited with it in the form of time certificates; that it was agreed that the company was not to pay on any money belonging to the road construction fund kept on open account; that the company should then and there submit and file a bid with the county court bidding four and three-fourths per cent interest, and that such a bid was filed in February, 1917, by which the company agreed to become depository of the road construction fund when the county moneys were let. It is further contended by the company that it has complied with its part of the agreement; has paid all of the interest due under same, and is not liable for any interest on the part of the road construction fund left on deposit as an open account. To this part of the answer marked "Second" the county demurred as constituting no defense to the action. This demurrer was overruled, and a reply filed denying the new matter set up in the answer. The record of the county court of this entire transaction stated in the chronological order of the entries, with as little prolixity as the nature of same will permit, is as follows:

"Monday, April 9, 1917. Clerk ordered to advertise for bids for County depository.

"April 12, 1917. Clerk gave notice that sealed bids would be received on May 7, 1917, interest to be computed on daily balances and payable monthly. A certified check for three hundred dollars was to accompany bid.

"Monday, May 7, 1917. Central Missouri Trust Company bids four and three-fourths per cent annual interest for one equal part of county money, advertised to be let by the county court Monday, May 7, and enclosed check for three hundred dollars called for in the advertisement.

"May 7, 1917. Ordered by the court that the Central Missouri Trust Company be designated as the county

depository for all moneys belonging to the road con-
struction fund for a period of two years, the company
being found to be the highest bidder.

"May 9, 1917. The Trust Company files bond for
the road construction fund, which was examined, filed
and approved.

"May 9, 1917. It is ordered by court that the coun-
ty treasurer transfer to the Central Missouri Trust Com-
pany all moneys in his hands belonging to road construc-
tion fund."

I.   The company contends that the petition does not
state a cause of action.  Whether measured by the Com-
mon Law or the Code enough is contained therein to
show that the county complied with the letter
Pleading. and spirit of the law directing the course to be
pursued in the selection of a county depository
and in making a contract with the company by which the
latter became the depository of the road construction
fund.  The terms of this contract are definitely stated,
as well as the amount due to the county by reason of the
failure of the company to comply with said terms, and
the prayer is in accord with the damages alleged to have
been sustained.  While possibly not drawn with that
meticulous regard for form which a purist in style might
demand, enough is stated to comply with an intelligent
interpretation of the rules of pleading, and the petition
is not subject to tenable objection.

Preliminary to an analysis of the majority opinion
it is pertinent to say in regard to the second part of
the company's answer attempted to be woven with deft-
ness and care into the defense of this case, that the mat-
ter therein pleaded is wholly immaterial to the issues
stated in the petition, and should have been so held by
the trial court, and the demurrer sustained.  The com-
pany's defense is properly set forth in conformity with
our procedure in the first part of the answer.  More was
but mud upon the chariot wheels.  Thus much for the
pleadings.

II. Leaving out of consideration for the moment the mandatory statutes governing the conduct of public officials, which we will discuss later, a review of the action of the county court in this transaction is pertinent, in view of the construction placed thereon by the majority opinion.

Validity of Contract: Admission.

The futility of questioning the regularity of these proceedings, as affecting the validity of the contract with the company, is rendered apparent when this contention is considered in connection with the express admissions made by the company in its answer. Therein it is admitted that the company was selected by the county court as the depository of the road construction fund; that the company accepted the trust thus imposed, that the money belonging to the road construction fund was thereupon turned over to the company as the county depository by the treasurer under the order of the county court; that said fund thus deposited was kept and used by the company during the term of the contract. The only contested issue, therefore, under the pleadings, is as to the manner in which this contract, the terms of which are defined by the statute and cannot be varied, is to be enforced so far as concerns the compensation required to be paid by the company to the county for the use of the funds of the latter deposited with the former.

It is axiomatic as well as elementary in a legal proceeding, that matters admitted constitute issues submitted. This being true, it is, in all fairness, but chopping logic to contend that the minds of the parties never met and that there was no contract under which the county was entitled to recover. The rationale of this entire argument, from which it is sought to deduce the conclusion, despite the company's express admissions, is that the alleged failure of the county court to comply with the letter of the law in the preliminary steps leading up to the making of the contract, will effect the release of the company from any further obligation to pay interest to the county on the funds deposited with it. The vice in this argument, so far as concerns the regu-

larity of the proceedings, if not disposed of by the company's admissions, is dissipated when we consider the nature of the contract and the construction required to be given to statutes authorizing the making of same. A formal consideration of this question is therefore appropriate, although its presentation may involve repetitions of reasons for our conclusions heretofore generally adduced. The county court's record entries we will review more in detail in connection with a consideration of the nature of this contract and the interpretation of the statutes authorizing the making of the same. To this let us give attention.

III.  The general rule concerning the construction of statutes defining the duties of public officials is that they are mandatory. [Rock Island Co. v. United States, 4 Wall. 435, 18 L. Ed. 419.] This classification finds support in the relationship of officials to the public as one of trust, and as they act in a fiduciary as well as an official capacity, they are to be held to a strict performance of the duties imposed. Let us consider therefore whether the record-entries of this transaction show such a compliance with the statute and the law in regard to the duties of public officers as is required by the rule of construction stated. [Russell v. Tate, 52 Ark. 541, 20 Am. St. 193, 7 L. R. A. 180; Hornung v. State, 116 Ind. 458, 2 L. R. A. 510.]

*Variance.*

The company contends that the county did not plead or prove that the road construction fund constituted an equal part of the money to be let. Or, as stated in the reasons urged in support of the contention: "The petition alleged that the defendant submitted a bid for one equal part of the county's money advertised to be let by the county court, while the record introduced by the county showed that the company was designated the county depository for all money belonging to the road construction fund without either pleading or proving that the money belonging to this fund constituted one equal part of the money advertised to be let." In

short, that this constitutes a fatal variance, precluding the county's right to recover.

It is a general rule, which has been given express approval by our Code (Sec. 1272, R. S. 1919), that a variance between allegations and proof to be fatal must be such as to mislead the adverse party to his prejudice in maintaining his action or defense on the merits. If the correctness of the contention as made by the company be conceded, in what manner is the latter prejudiced? [Goode v. Cent. C. & C. Co., 179 Mo. App. 207; Olmstead v. Smith, 87 Mo. 602; Fischer v. Max, 49 Mo. 404; Bowles v. Quincy Railroad, 167 Mo. App. 268; Carson v. Quinn, 127 Mo. App. 525.] The contest was as to the amount of interest due on the money deposited. Although the county advertised for bids from those desiring to become depositories of one part of its funds, and the company framed its bid in accordance with the terms used by the county, upon the acceptance by the latter of the company's bid it was stated in effect that the one part was all the money belonging to the road construction fund. Any other interpretation of the terms of its acceptance cannot well be made in view of all of the other facts in the case. We have frequently held, well in accordance with reason, that even a variance in verbiage from a statute or ordinance will not render a contract made on behalf of the public nugatory or militate against its enforcement. [State ex rel. Ford v. Ellison, 287 Mo. l. c. 689 and cases.] That the company became the depository of the money as the road construction fund is shown not only by its acquiescence in the designation given to the money by the county, but by the company's so denominating it in its bond given for the faithful performance of its duty as the depository, which is in the following language: "Comes now the Central Missouri Trust Company by Howard Cook and presents its bond as county depository for the Road Construction Fund, which bond the court examines and finds sufficient and orders approved and filed." In what manner, therefore, can it be said that the company was

injured by the variance? No complaint was made by it at the time the contract was entered into and the money accepted for deposit, or subsequently, until interposed defensively in this action. The company received the money, employed it as it was authorized to do in the usual conduct of its business, and for aught that appears, either in evidence or by inference, the profit arising from its use was in no way impaired by the fact that it was designated in a different manner when the bid was filed than when it was accepted, the money deposited and the bond given for its safe keeping. These facts, therefore, are a far cry from a fatal variance. [Gannon v. Lac. Gas Light Co., 145 Mo. 502.]

IV. The record entries sufficiently show the nature of the contract between the company and the county. Parol evidence was therefore inadmissible to vary its terms. Especially is this true where the evidence sought

Parol Evidence. to be introduced has reference to another and different agreement between the parties and is connected with that at bar only by inference. The admission of testimony as to the agreement set up in the second part of the company's answer was therefore error. The county court in the selection of a depository was acting as the agent of the county within the limit of its defined powers. [Lamar Twp. v. City of Lamar, 261 Mo. 171.] As such it can only speak by its records, which become articulate in the determination of a matter at issue when in conformity with the law authorizing the action.

V. The orders concerning this transaction were made contemporaneously with the county court's action at each stage of the proceeding. The authority for mak-

Contemporaneous Orders: Subsequent Record. ing the orders and their verity as representing what was really done is not impugned; nor is it contended that there was not a substantial compliance with the statute (Sec. 2164, R. S. 1919) prescribing gen-

erally the course to be pursued by a county in the making of a contract.

The fact, therefore, that these orders were not formally entered upon the record but were kept on file by the clerk until some time after the consummation of the contract will in no wise affect the validity of the transaction. [Morrow v. Pike Co., 189 Mo. l. c. 620.] Where, as at bar, there is neither evidence nor claim of injury attributable to the deferred entries of the orders upon the record, a complaint in regard thereto is not entitled to consideration as affecting the validity of the contract. It cannot be seriously contended that the misprison of the clerk will suffice to modify, much less annul, the authorized and otherwise regular orders of the county court. [Henry County v. Salmon, 201 Mo. l. c. 151 and cases.]

VI. Estoppel is not an issue in this case. The county court could not make a legal contract with the company whose bid was accepted as a depository of

Estoppel. public money, except as authorized by law. The limit of the court's authority was that it should enter into no contract for the letting of public money unless the interest thereon was required to be computed on daily balances. [Sec. 9584, R. S. 1919.] If therefore the court made other contracts with the company not under the statute they were void.

Persons dealing with public officials are bound by a constructive notice of the law which measures the limit of the power of such officials. The public therefore, by which is meant in this case the county, can not be estopped to deny the *ultra vires* acts of its officers. Estoppel, under many well defined cases, constitutes no defense in this proceeding and was not an issue entitled to consideration.

This court, in the epigrammatic language of BLACK, J., in Sturgeon v. Hampton, 88 Mo. 213, said: "The county courts are not the general agents of the counties or of the State. Their powers are limited and defined

by law. These statutes constitute their warrant of attorney. Whenever they step outside of and beyond this statutory authority their acts are void. [Saline County v. Wilson, 61 Mo. 237; Wolcott v. Lawrence County, 26 Mo. 275; Steines v. Franklin County, 48 Mo. 167.] Persons dealing with such agents are bound to take notice of their power and authority. [State v. Bank, 45 Mo. 538; Andrew County v. Craig, 32 Mo. 531.] We should go far to uphold their acts when merely irregular, but in this case the right to a deed for these lands must stand upon the order of the county court discharging the company from the payment of the agreed compensation to the school fund, and the consideration of one thousand dollars paid-up stock. Both these acts were not simply irregularities, but they were without any warrant or authority in law and are void. These infirmities appear upon the face of the deeds and orders to which they make reference, and the purchaser from the company took with full notice.

"Nor is the county estopped from disputing the validity of these deeds. These *quasi*-public corporations are not estopped by the illegal and void acts of their limited statutory agents. The record shows that the land in question was assessed for taxes for the years 1870 to 1879, both inclusive. The taxes for 1870 were paid by plaintiffs; for the other years the taxes have not been paid. These facts do not constitute an estoppel. [St. Louis v. Gorman, 29 Mo. 593.]"

The rule is thus announced in Heidelberg v. St. Francois County, 100 Mo. l. c. 76: "But it is said, in substance, in one of plaintiff's declaration of law, that inasmuch as the bridge commissioner received and accepted the abutments and pier built by plaintiff, and the county court accepted said report and paid the Bullen Bridge Company for its work, that thereby the county is estopped from resisting a recovery by plaintiff. The doctrine of estoppel does not apply to counties. Nor could the county even by an order entered of record ratify the void act of the bridge commissioner (Wolcott v.

Lawrence County, 26 Mo. 272), for the reasons that his acts being void, they were incapable of ratification. [Johnston v. Wilson, 2 N. H. 202; Johnson v. Dist., 67 Mo. 319; Maupin v. County, 67 Mo. 327 and cases cited; Bigelow on Estoppel (5 Ed.) p. 466, cited with approval in State ex rel. v. Murphy, 134 Mo. l. c. 567.] If the act undertaken was in and of itself *ultra vires* of the corporation, no act of the body can have the effect to estop it to allege its want of power to do what was undertaken.''

A later ruling on this subject appears in Phillips v. Butler, 187 Mo. l. c. 713: ''That a county court cannot even by order of record ratify the void acts of one of its officers, and it must logically follow that if it could not even by entry of record ratify the void order of one of its officers, it could not ratify one of its own void acts. There is no difference in principle. The reason is that a void act is incapable of ratification. Nor does the fact that plaintiff rendered services in assisting the prosecuting attorney of Butler County in protection of its swamp land, by and with the knowledge and consent of the county court of said county, amount to a ratification by that court of his supposed contract of employment. [Wolcott v. Lawrence County, 26 Mo. 272.] Nor does the doctrine of estoppel apply to counties. [Heidelberg v. St. Francois County, supra; Snyder v. Railroad, 112 Mo. 527.]''

See also Subdivision V, Mullins v. Kansas City, 268 Mo. l. c. 460.

No power having been vested in the county court to act other than as directed by the statute it cannot be contended, with any regard for the rules of construction, that the cases cited in the majority opinion sustain the contention that the county is estopped from denying the authority of the county court in the matter. These cases only have reference to irregularities in the performance of authorized duties and not to *ultra vires* acts.

VII. The terms of the letting of the public money by the county court to another depository is invoked by

analogy to aid in determining the meaning of the con-
tract made with the company. Reasoning by
Analogy. analogy is at best but a form of inference. It
is based upon the theory, that if two contracts agree with
each other in certain respects they will probably agree in
other respects. The degree of this probability, in logic
or in law, must depend upon the number and importance
of their recognized agreements. Although they may, as
at bar, embody the same subject-matter, if their terms
are clear and definite, no room is left for the determina-
tion of the meaning of one by a reference to the other.
The application in this instance of the trite, but none the
less true, aphorism is peculiarly appropriate that what
is clear within itself requires no ulterior aid to render it
more clear.

The fact, therefore, that the county court let the
public funds at a certain rate of interest on daily bal-
ances to one depository and let like funds to the com-
pany at a different rate of interest likewise on daily
balances, for the court was not otherwise empowered and
in each case the rate of interest was definitely stated,
leaves no room for the reference of one of these contracts
to the other to determine their respective meanings. An
attempt to reason by analogy therefore to sustain the
contention is not only unnecessary but unauthorized.

VIII. We come now to a consideration of the ques-
tion as to the manner in which the interest should be
computed upon public funds let by a county court to a
depository. In addition to what has been stated as to
Interest. the authority of officials when acting for the
public, it may be added that in the care and cus-
tody of public funds they have no power other than that
expressly conferred by law. This salutary limitation, in
view of the nature of the subject-matter, should require
no argument to sustain it. Public funds are the fruits
of taxation imposed upon the people to maintain that
intangible thing we call the government, through the in-
strumentality of which the affairs of the public are con-

ducted. Other than for this purpose the use of such funds is not authorized. The Legislature in recognition of the sacred character of these funds and to insure their safe-keeping has prescribed with discriminating care the manner in which they shall be kept. [Art. 8, chap. 86, supra.] A material part of the duty thus defined is the exacting of interest of the depository for the use of the money. Concerning this, the statute leaves no room for cavil. It provides that: "The interest upon each fund shall be computed upon the daily balances with the depository, and shall be payable to the county treasurer monthly." [Sec. 9584, R. S. 1919.]

Under no other conditions than those prescribed can public funds be deposited. [Henry County v. Citizens Bank, 208 Mo. l. c. 226.] An attempt therefore, of which there was no convincing testimony, to enter into or consummate a contract with the depository for the deposit with it of public funds free from the burden of interest or to be calculated upon it as a time deposit finds no sanction in the law. The contract entered into, when rightly construed, conforms to the requirements of this statute. Its enforcement therefore according to its unequivocal terms is authorized. The action of the trial court in ruling to the contrary was therefore error and the judgment should have been reversed and the cause remanded, with directions that a judgment be entered in favor of the county in the amount of its claim with interest from the date of the filing of this suit at the rate of six per cent per annum.

Headnote 1: Counties, 15 C. J. sec. (1926 Anno); Headnotes 2 and 3: Evidence, 22 C. J. secs. 163, 69; Headnotes 4 and 5: Estoppel, 21 C. J. sec. 219.