State, *ex rel.* Nebeker, *v.* Sutton.

No. 11,121.

## STATE, EX REL. NEBEKER, *v.* SUTTON.

COUNTY SCHOOL SUPERINTENDENT.—*Term of Office.*—A county superintendent of public schools, properly elected and qualified, will hold the office until his successor is elected and qualified.

SAME.—*Record of Election.*—*Evidence.*—The record of such election, made by the county auditor, is *prima facie* correct, and is *prima facie* evidence of such election.

SAME.—*Election.*—*Ballots.*—*Testimony of Trustees.*—When the township trustees agree that the election of such superintendent shall be by secret ballot, the election will be determined by the ballots actually cast, and in a suit regarding the validity of such an election the ballots are the best evidence, but when they have been lost, it is proper for the jury to consider the testimony of the trustees who cast the ballots, and of those who counted them and announced the result.

SAME.—*Instructions.*—The court should not charge, as a matter of law, that the testimony of the trustees casting the ballots is the best evidence, in the absence of the ballots.

SAME.— *Trustees.* — *Acquiescence in Announcement.*—Where the trustees agreed that the election should be by ballot, adhered to that mode throughout, and at the time the result was announced supposed the result was correctly announced, it was error to charge the jury that if the trustees adjourned without objection, an acquiescence in the result might be inferred, and that such an acquiescence would amount to an election.

INSTRUCTIONS.—*Harmless Error.*—The refusal of instructions, the substance of which is embraced in others given, is a harmless error.

SAME.—*Not Signed.*—The refusal of instructions, not signed by the party, or his attorney asking them, is a harmless error.

SAME.—*Contradictory.*—When the instructions are contradictory, etc., and tend to mislead the jury, the judgment will be reversed.

From the Warren Circuit Court.

*T. F. Davidson* and *W. P. Rhodes,* for appellant.

*C. V. McAdams, J. McCabe* and *E. F. McCabe,* for appellee.

ZOLLARS, J.—The relator instituted this action under sections 1131 and 1132, R. S. 1881, to settle the right to the office of superintendent of schools in and for the county of Warren. The averments of the complaint are substantially as follows: On the first Monday in June, 1881, the relator

State, *ex rel.* Nebeker, *v.* Sutton.

was duly and legally appointed and elected by the trustees of the several townships of the county superintendent of schools for the two succeeding years. He gave bond, qualified and took charge of the office, and was filling it and discharging its duties when the information herein was filed, on the 19th day of June, 1883. On the first Monday in June, 1883, the trustees of the several townships again met to elect his successor. There were five candidates for the place, among whom were the relator and appellee. As had been the custom theretofore, the trustees agreed that the election should be made by secret ballot, and that a majority of the twelve trustees should be necessary for an election. On the fifteenth and last ballot, six of the trustees voted for appellee, three voted for the relator, and three for Crawford, another candidate. One of the trustees, who acted as teller, either by mistake, design or accident, announced and called seven ballots for appellee, as having been cast for him, and the person who kept the count of the votes, by accident or mistake, credited to appellee one more vote than was cast for him, so that the result of the ballot was made to appear to the trustees to stand seven for appellee, two for Crawford and three for the relator. The trustees were thus lead to believe, and did then believe, that appellee had received seven votes, and was elected, when, in truth and in fact, he had received but six votes, and was not elected. Subsequent to this, and without any other election, appellee took the oath, filed his bond, and has since claimed, and wrongfully and unlawfully intruded himself into the office, and holds it against the relator, who claims the right to hold the office until his successor shall have been elected and qualified. Relator asks for a judgment declaring and establishing his rights to the office as against the claims of appellee. Upon this complaint, and an answer of general denial, the cause was submitted to a jury, and a verdict returned for appellee. The overruling of the motion for a new trial is assigned as error.

Upon the trial of the cause it was admitted that the rela-

State, *ex rel.* Nebeker, *v.* Sutton.

tor was duly elected superintendent of schools on the sixth day of June, 1881, to serve for the ensuing two years; that he qualified as such, and had performed and was performing the duties of the office at the time the information was filed, and that he still claims the right to hold the office by virtue of that election. The trustees were witnesses in the cause. Six of them testified that they voted for appellee on the fifteenth and last ballot. Three of them testified that they wrote their ballots, and voted for Crawford on that ballot. Three others testified that they wrote their ballots, and voted for the relator on that ballot. It is conceded that the trustees agreed to elect by secret ballot; that seven votes should be necessary to a choice, and that the voting was done by such ballot. Those who counted the ballots from the hat in which they were deposited by the trustees, testified that they were correctly called and counted.

It is contended by the relator that the court erred in refusing two instructions asked by him. It is contended by appellee that so far as they stated the law correctly, they were embodied in instructions given by the court; and further, that no error can, in any event, be predicated upon the refusal, because the instructions were not signed by the relator or his counsel, and that hence the court had a right to refuse them. The statute provides that when special instructions are desired by a party, they must be reduced to writing, numbered and signed by the party or his counsel. Section 533, R. S. 1881. That such instructions may be made a part of the record without a bill of exceptions, it is well settled that they must be so signed. And as the court can not know in advance by what mode parties may wish to make them a part of the record, the holdings have been that unless they are so signed they may be refused, and that such refusal will not be an available error. *Stott* v. *Smith,* 70 Ind. 298; *McCammack* v. *McCammack,* 86 Ind. 387.

We think with counsel for appellee, that so far as the instructions state the law of the case correctly, they are em-

State, *ex rel.* Nebeker, *v.* Sutton.

braced in those given by the court, and that hence the refusal was a harmless error, even if the instructions had been properly asked. In those refused the court was asked to charge the jury that the result of the election must be determined by the votes actually cast, and that seven was necessary to a choice; that if appellee did not, in fact, receive more than six votes, he was not elected, though it appeared that more than that number were reported or counted for him; that no accident or mistake, if any there were, could change the result; that the ballots, if they could be produced, would be the best evidence of the votes actually cast, but as they could not be produced, the best evidence of the votes cast by the trustees, and for whom cast, was the evidence of the trustees casting the ballots.

In the fourth and fifth instructions given by the court, the jury were charged, in substance, that if they should find that the election was to be by ballot, that seven votes were necessary to a choice, that appellee did not receive that number of votes, and that no further action was taken by the trustees in reference to such election, then no election was made, and the verdict should be for appellant; that in determining how many ballots were cast for appellee upon the last ballot, the ballots themselves, if they could be produced, would be the best evidence; but as they could not be produced, it was proper for the jury to consider the testimony of those who cast the ballots and those who saw the ballots as they came out of the hat in which they were collected; that the ballots actually cast must govern, irrespective of how those who cast them might have intended to vote.

To have charged the jury that the testimony of the trustees as to how they severally voted was the best evidence, would practically have been to exclude from them any consideration of the testimony of those who examined, called and counted the ballots from the hat. That the testimony of the trustees who cast the ballots was the best evidence, was a proper subject for argument to the jury, but it was not

for the court to charge as a matter of law, that it was the best evidence. The jury were properly instructed that they should consider, not only the testimony of the trustees who cast the ballots, but the testimony also of those who counted the ballots from the hat. It was for the jury to say to whom credence should be given, and what was the most reliable testimony. If it be claimed that fraud intervened, it was for the jury to say upon what testimony they would rely in support of, or against that claim. If it be claimed that there was a mistake, it was for the jury to say from all the testimony, whether that mistake was upon the part of the trustees, as to the ballots they actually cast, or upon the part of those who counted them from the hat.

The record of the election of superintendent in 1883, as made by the county auditor, was introduced in evidence. The court charged the jury in relation to it, amongst other things, that such a record when made, as required by law, is *prima facie* correct, and will stand until overthrown by evidence showing that it is not true. We think there is nothing erroneous in this instruction. See *Reynolds* v. *State, ex rel.*, 61 Ind. 392.

The statute requires that the county auditor shall be clerk of such election, and shall keep the record thereof in a book to be kept for that purpose. Section 4424, R. S. 1881. This record is to serve some purpose. It is to be notice and evidence of something. If, in this case, the record had been the only evidence, it would clearly have made a *prima facie* case in favor of appellee, whom it shows to have been elected superintendent of schools. The presumption is that a public officer, charged with the performance of a public duty, will perform that duty honestly, faithfully, and truthfully, as the law requires. *Mills* v. *Board, etc.*, 50 Ind. 436; *Thompson* v. *Doty*, 72 Ind. 336.

To hold that a record which a public officer is required to make, and has made, is not *prima facie* correct, is to hold that the law has required a useless thing in requiring such a

record to be made. The record here is doubtless such a record as is competent evidence under the code. Section 462, R. S. 1881. See *Wells* v. *State, ex rel.*, 22 Ind. 241; *Painter* v. *Hall,* 75 Ind. 208. If it is not *prima facie* evidence of what it contains, it is useless as evidence.

The sixth instruction given by the court is as follows: "If you should find that the chairman of the board of trustees declared the defendant duly elected to the office of county superintendent, and no objection was made thereto, and the board thereupon adjourned without taking further action in the appointment of such officer, you would have the right to infer that the board of trustees acquiesced in such announcement, and accepted the same as a discharge of their duty to make such appointment."

In the seventh instruction the court charged the jury that it was not essential that the election of a superintendent should be by ballot, and that if they should find that the trustees organized by selecting one of their number to act as chairman; that to determine their choice they balloted for the various candidates; that it was finally announced and declared by the chairman that appellee had received a majority of the votes, and was, therefore, duly elected; and that the announcement was acquiesced in by the board of trustees, and accepted by them as the discharge of their duty in the making of such appointment, then the appointment of appellee would be valid, even though the jury should find that it was made under a mistake of fact.

These instructions, taken together, amount to this: If the announcement and declaration of the chairman was acquiesced in by the board of trustees, then appellee was elected; and such acquiescence might be inferred from the fact that the chairman announced and declared the election, and the trustees adjourned without objection having been made as to the correctness of the announcement.

As applied to the evidence, these instructions do not state

the law correctly, and were calculated to mislead the jury. The uncontradicted evidence was that the trustees under an arrangement that the election should be by secret ballot, and that seven votes should be necessary to an election, cast fifteen ballots. There is no evidence that upon the fifteenth and last ballot any of the trustees had any knowledge as to how the others voted. Upon this ballot two votes only were called and counted for Crawford. After the result of the ballot was announced, and appellee declared elected, the trustees adjourned without anything further having been done or said about the matter. After the adjournment, and the trustees had dispersed, three of them who had agreed among themselves to vote for Crawford upon that ballot, had a conversation in which each one claimed to have voted for him. This seems to have been the first discovery that the result of the ballot might not have been correctly announced.

The trustees were not compelled to adopt the secret ballot as the mode of election, but they did adopt that mode and adhered to it throughout. There is nothing to indicate in the slightest degree, that any other mode was adopted or thought of. The result was announced as the result of the fifteenth and last ballot. Nor is there anything in the evidence to indicate in any degree, that the trustees acquiesced in, or accepted, the announcement of the vote cast for appellee, and of his election, as anything else than as an announcement of the correct result of the ballot. There is nothing from which an inference could be drawn that the trustees abandoned the ballot as the mode of election, and acquiesced in, or accepted, the announcement of the chairman as the election. They did not understand that the announcement amounted to anything, except as a statement of the correct result of the ballot. From these instructions, the jury might readily understand that the announcement, unobjected to, operated as an election, regardless of what the correct vote might have been. Nor can it be said that the trustees acquiesced in or accepted the announcement as correct, when they

had no knowledge upon the subject, and at that time no means of knowledge as to the correctness of the announcement. It was error, therefore, to instruct the jury that because the trustees were silent upon a matter about which they had no knowledge, or means of knowledge, they might infer an acquiescence on the part of the trustees.

It is true that the fourth and fifth instructions stated the law correctly, that the ballots actually cast must govern, but in the sixth and seventh under examination, an entirely different standard was adopted, and the acquiescence therein stated was declared to be sufficient to authorize a finding that appellee was elected. These instructions are irreconcilable in theory with the fourth and fifth. Taken all together, the instructions must have left the jury in doubt and uncertainty as to what the law applicable to the case was. When such is the case, the judgment must be reversed. *Somers* v. *Pumphrey*, 24 Ind. 231; *McEntire* v. *Brown*, 28 Ind. 347. See, also, *Toledo, etc., R. W. Co.* v. *Shuckman*, 50 Ind. 42.

It is contended by counsel for appellee, that whatever the holding upon the instructions may be, the judgment should not be reversed, because there is no evidence to show that the relator has the necessary qualifications to hold the office. We do not think that this contention can be maintained. It is admitted that the relator was duly elected in 1881, and at the time the information was filed was holding, and claiming to hold, the office by virtue of that election until his successor should be elected and qualified. As to him, the question in this case is not as to his qualification to hold the office, but as to whether or not he shall hold over, because no successor has been elected.

For the error in giving the sixth and seventh instructions, the judgment is reversed, with costs.

Filed Oct. 11, 1884. Petition for a rehearing overruled Feb. 14, 1885.