Filed Jan. 3, 1889.

---

No. 14,564.

## HORNUNG v. THE STATE, EX REL. GAMBLE.

COUNTY SUPERINTENDENT.—*Election by Trustees.*—*Trustee Can Not Vote for Himself.*—The election of the county superintendent of schools being vested by law in the township trustees, one of such trustees can not legally vote for himself for that office, and a vote so cast can not be counted in determining the result of the election.

SAME.—*Failure to Object.*—*Implied or Informal Vote.*—A failure of the trustees voting for other candidates to make further objection after the presiding trustee had declared the result of the election, can not be held to be either an implied or informal vote in favor of the officer who voted for himself.

From the Fayette Circuit Court.

*R. Conner, G. C. Florea* and *H. L. Frost,* for appellant.

*D. W. McKee* and *L. L. Broaddus,* for appellee.

NIBLACK, J.—The proceedings in this case were based upon an information in the name of the State, on the relation of Josiah S. Gamble, and against Frank G. Hornung, which caused the court below to be informed that, on the first Monday in June, in the year 1885, the trustees of the several townships of the county of Fayette met at the office of the county auditor for the purpose of appointing a superintendent of public schools for that county, and thereupon appointed

the relator such superintendent; that the relator, who was at the time a citizen of the county, immediately qualified and entered upon the duties of the office; that, on the 6th day of June, 1887, which was the first Monday of that month, the trustees of the several townships of said county of Fayette again met at the office of the county auditor for the purpose of appointing a superintendent of public schools as the successor of the relator; that there were, at the time, nine, and only nine, townships in said county of Fayette, the trustees of all which were present; that the defendant, Hornung, was then the duly elected and acting trustee of Connersville township, one of the townships of said county, and as such trustee was present at the last named meeting, being, also, at the same time an applicant for the office of superintendent of public schools to succeed the relator; that the trustees proceeded on the same day to determine by ballot who should be appointed to the office in question; that in casting their ballots four of such trustees voted in favor of the relator, and that the remaining four trustees, other than the defendant, voted for him, the defendant; that in casting his ballot the defendant voted for himself; that the ballot so cast for himself by the defendant was counted for him by the trustees, which gave him an apparent majority of one vote; that the ballot thus cast by the defendant was an illegal vote, and ought not to have been counted for any purpose whatever; that the county auditor did not give the casting vote in favor of either one of the parties so voted for by the trustees; that the trustees thereafter adjourned without taking any further action in the matter of the appointment of a superintendent of public schools; that, by reason of the foregoing facts, the defendant assumed that he had been appointed such superintendent of public schools, known as county superintendent, for said county of Fayette, and took an oath of office and executed an official bond as the law required of persons appointed to that position; that, on the 13th day of June, 1887, the defendant demanded the possession of the office of such

superintendent, and deforced him, the relator, from the same; that the defendant had ever since intruded himself into said office, and wrongfully usurped the powers and duties pertaining thereto. Wherefore the defendant was required to answer by what authority he claimed to hold the possession of such office, and all other appropriate relief was invoked.

A demurrer to the information being first overruled, the defendant answered: First. In general denial. Secondly. Giving a history of the cause substantially the same as stated in the information up to the time when the township trustees were about to commence to ballot for a county superintendent of schools, on the first Monday in June, 1887, and then averring that such trustees, before proceeding to ballot, selected Richard W. Sipe, one of their number, to act as chairman of their meeting, who acted accordingly; that the county auditor attended the meeting and acted as the clerk of the election; that the relator and the defendant and one other person were all applicants for the office which the trustees had met to fill; that, without any formal agreement as to the manner of conducting the election, the trustees proceeded to express their individual choice as between the several applicants for the office of county superintendent of schools by voting written ballots; that, throughout thirty-five ballots, the chairman, Sipe, and three others of such trustees voted for the relator, and that the defendant and three other of such trustees voted for him, the defendant; that the remaining trustee voted all the time for the other applicant above referred to; that on the thirty-sixth ballot all of the trustees voted as they had before, except that such remaining trustee voted for the defendant; that during all of the balloting the chairman and other trustees, including the county auditor, had full knowledge that the defendant was voting for himself; that after such thirty-sixth ballot was taken, Sipe, as chairman of the meeting, in the presence and hearing of all the other trustees, announced that the defendant was duly elected and appointed to said office of

county superintendent of schools; that none of the trustees made any objection to this announcement, and all acquiesced in, and consented to, the same; that said meeting thereupon adjourned without day; that immediately after such adjournment, the county auditor, in a book kept for that purpose, made a proper record of the proceedings had by such trustees, showing that the defendant had been duly elected and appointed as such superintendent; that pursuant to such election and appointment, the defendant, on the 13th day of June, 1887, and after resigning the office of township trustee, took and subscribed the oath required by law and executed an official bond with approved freehold security in the penal sum of one thousand dollars conditioned as the law prescribes; that immediately thereafter the county auditor reported to the superintendent of public instruction that the defendant had been appointed county superintendent of schools for Fayette county; that the defendant has ever since been recognized as such last named superintendent by the superintendent of public instruction; that after executing a bond and qualifying as above stated, the defendant entered upon the discharge of his duties as such county superintendent and has since continued in the discharge of such duties.

A demurrer was sustained to this second paragraph of answer, and a trial resulted in a finding in favor of the relator, assessing his damages at $425, and in the award of judgment accordingly.

The errors assigned upon the proceedings below, and the argument submitted in favor of the reversal of the judgment, present two questions for our decision:

*First.* Had Hornung, while acting as a township trustee, the lawful right to vote for himself for the office of county superintendent of schools, and to have his vote counted for himself in determining the result of the ballotings? If not, was there such an acquiescence in, and tacit consent to, the announcement by the chairman of the meeting that he,

Hornung, had been duly elected as such county superinten-dent, as amounted in law to an appointment to that office ?

A township trustee is the agent of his township in the transaction of its business, and hence, in the performance of his duties, he acts in a fiduciary, as well as an official, capac-ity. Therefore the rule which requires fair dealings and dis-interested conduct on the part of an agent or trustee towards those he represents, applies, with full force, to a township trustee.

The law will not allow an agent or a trustee to place him-self in such an attitude toward his principal, or his *cestui que trust,* as to have his interest conflict with his duty, and a township trustee is as much amenable to that rule as any other agent or trustee. As applicable to private rights, the enforcement of such a rule is imperatively necessary, and, as a matter of public policy, the recognition of such a rule is of equal, if not greater, importance. Greenhood Public Policy, 302.

A public officer is impliedly bound to exercise the powers conferred on him with disinterested skill, zeal and diligence, and primarily for the benefit of the public. It is, also, the duty of a public officer, having an appointing power, to make the best available appointment, and, in such a case, the right of appointment is not, in any sense, the property of the of-ficer possessing the appointing power. It is the policy of the law to secure the utmost freedom from personal interest, or undue influences, in the selection of public officers, whether elective or appointive. Hence it is that the sale, or absolute transfer, of an office is prohibited, and that threats, bribery, and other kindred influences, used to obtain an office, are made criminal; also, that all contracts in restraint of the appointing power, or of the elective franchise, are void. *State, ex rel.,* v. *Hoyt,* 2 Oregon, 246, was based upon the follow-ing facts: In June, 1866, Hoyt was elected marshal of the city of Portland by the common council of that city, and entered upon the duties of the office. In July, 1867, the

common council took proceedings for the purpose of electing a successor to Hoyt. That body consisted of nine members, and, under the charter of the city, five votes were required to elect a marshal. Rosenheim was, at the time, a member of the common council, and was voted for as a candidate for the office of marshal, receiving five, and only five, votes, one of which was cast by him and for himself. Rosenheim, claiming to have been lawfully elected marshal of the city, proceeded by information against Hoyt to obtain possession of the office. Previous to the time of the meeting at which Rosenheim claimed to have been elected, the common council had adopted a rule, which was recognized as still in force, as follows:

" Every member, who shall be present when a question is put, shall vote for or against the same, unless he be immediately interested, in which case, he shall not vote."

On behalf of Hoyt it was, amongst other things, contended that, under the operation of this rule, as well as upon principles of public policy, Rosenheim's vote for himself was an illegal vote, and that hence he did not receive the requisite number of legal votes to elect him as marshal.

The court held that the rule in question was a binding rule upon the common council, and that, in consequence, Rosenheim's vote for himself was a nullity; also, that it is contrary to the policy of the law to permit a public officer, having an appointing power, to use such power as a means of conferring an office upon himself.

We concur in both of the conclusions reached as above by the Supreme Court of Oregon, and, consequently, feel constrained to hold that Hornung's vote for himself for the office of county superintendent was contrary to public policy, and, for that reason, an utterly illegal vote.

The announcement by the chairman of the meeting at which Hornung was voted for, that the latter had been duly elected as county superintendent, was evidently made upon the mistaken assumption, but in the belief, that Hornung

had the right to vote for himself if he chose to do so, and the reasonable inference from the antecedent facts is that no objection was made to, and that there was a seeming acquiescence in, that announcement by those who had voted for the relator, only because Hornung had received an apparent majority of the votes cast on the last ballot. The failure of those who had not voted for Hornung to interpose further objection to his selection ought not, under the circumstances, to be construed either into an implied or an informal vote in favor of his appointment. *State, ex rel.*, v. *Kilroy*, 86 Ind. 118; *State, ex rel.*, v. *Sutton*, 99 Ind. 300; *State, ex rel.*, v. *Porter*, 113 Ind. 79; *State, ex rel.*, v. *Edwards*, 114 Ind. 581.

The judgment is affirmed, with costs.

Filed Dec. 15, 1888; petition for a rehearing overruled Jan. 5, 1889.