[Civ. No. 6218. First Appellate District, Division One.—February 7, 1928.]

C. F. NOBLE, Respondent, v. CITY OF PALO ALTO (a Municipal Corporation), Appellant.

48

Norman E. Malcolm, City Attorney, for Appellant.

Louis Oneal and Maurice J. Rankin for Respondent.

PARKER, J., *pro tem.*—This is an action brought to determine the ownership of certain personal property, to wit, cash in the sum of $308. Plaintiff and defendant, City of Palo Alto, by appropriate pleading set up their respective

claims to the said amount, and after trial before the court judgment was rendered in favor of plaintiff.

From this judgment defendant appeals.

The record discloses that at all times involved herein plaintiff was chief of police of the City of Palo Alto, and the money in dispute here is money derived from the sale of certain bicycles admitted to have been found on the streets and highways of Palo Alto, and in some few instances outside of the limits of said city. Many of these bicycles were found by plaintiff, and the others were found by other police officers and by them brought to the city hall of Palo Alto and there stored. It appears from the record here that there was a standing order in the police department of the City of Palo Alto directed to the members thereof that each officer should in his territory take up abandoned personal property of value and deliver the same to the city hall. In the period covered by this controversy a large number of bicycles were accumulated, and from time to time private sales were made, the amount of money realized being as heretofore stated. No accounting was made of these sales nor was notice thereof given. The custom was that as a purchaser appeared the sale was consummated and the transaction closed. All of these sales were made by the plaintiff chief of police and the moneys derived therefrom retained by him.

There was no ordinance or regulation of the City of Palo Alto or any board or commission of said city making it the duty of the plaintiff or any member of the police department to gather lost property, nor is there any such express direction in the general law of the state. Nor is there any ordinance or general law in terms directing the turning over of the funds in question to the public treasury.

The plaintiff chief of police contends here, as he did in the court below, that the money thus received belongs to him without the duty of accounting to the city, and urges that whatever may be the right or claim of the original owners of the lost property the City of Palo Alto is not concerned therewith, and the claim of the city to the funds in dispute is without right. In this the plaintiff was sustained by the court below. There are many principles discussed in the briefs on file. At the outset defendant attacks the form of action and the right of an individual to prosecute an action

against the city. This we pass for the present. The ground upon which the claim of plaintiff was upheld seems to be that the property named, the bicycles, being lost property, belonged to the finder, subject to the provisions of the general law; that the finding and retention of the property was not within the actual or implied duties of the police department or the members thereof, and that the fact that in this case the finder happened to be a police officer does not in any manner abridge his right or claim to the property found, or place upon his possession any different status from that of any individual finder.

As an additional fact it may be here stated that the testimony discloses that the officers on patrol were ordered to bring all property found to the city hall, and make a record of the delivery, together with an identifying description. The chief of police testified further that one of the purposes in collecting the bicycles was to recover any that might have been stolen and concerning which the usual police bulletin had been circulated. It further appears that in some cases, after sale of a bicycle, the original owner would appear and make claim, and in this event settlement would be made with him personally and a refund allowed the buyer, all of these negotiations being conducted through the chief of police personally and in his individual capacity.

From the foregoing sufficient appears to fully present the case made.

We do not feel that it requires any minute analysis of all of the points urged. It is our conclusion that the claim of plaintiff cannot be upheld, and that to establish the doctrine contended for by him would lead to a result in contravention of a sound public policy, and on this ground alone we deem it necessary to reverse the judgment of the court below.

Public policy is a vague expression, and few cases can arise in which its application may not be disputed. Mr. Story, in his work on Contracts (sec. 546), says: "It has never been defined by the courts, but has been left loose and free of definition in the same manner as fraud." By "public policy" is intended that principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good, which may be termed the policy of the law. Likewise, it

has been defined as "the principles under which freedom of contract or private dealing are restricted by law for the good of the community"—the foregoing definitions being supported by respectable authority (32 Cyc. 1251). Public policy means the public good. Anything which tends to undermine that sense of security for individual rights, whether of personal liberty or private property, which any citizen ought to feel is against public policy. It is the evil tendency and not the actual result which is the test of illegality (*Maryland Trust Co.* v. *National Bank*, 102 Md. 608 [63 Atl. 79]).

█ A public officer is impliedly bound to exercise the powers conferred on him with disinterested skill, zeal, and diligence and primarily for the benefit of the public (*Harnung* v. *State*, 116 Ind. 458 [2 L. R. A. 510, 19 N. E. 151]).

█ Dealings between a public officer and himself as a private citizen which bring him into collision with other citizens equally interested with himself in the integrity and impartiality of the officer are against public policy (*Goodyear* v. *Brown*, 155 Pa. 514 [35 Am. St. Rep. 903, 20 L. R. A. 838, 26 Atl. 665]).

█ Public policy and sound morals alike forbid that a public officer should demand or receive for services performed by him in the discharge of official duty any other or further remuneration than that prescribed and allowed by law (*Somerset Bank* v. *Edmund*, 76 Ohio St. 396 [10 Ann. Cas. 726, 11 L. R. A. (N. S.) 1170, 81 N. E. 641]).

Actual injury is not the principle the law proceeds on. Fidelity in the agent is what is aimed at, and as a means of securing it the law will not permit him to place himself in a position in which he may be tempted by his own private interests to disregard those of his principal. This doctrine is generally applicable to private agents and trustees, but to public officers it applies with greater force, and sound policy requires that there be no relaxation of its stringency in any case that comes within its reason (*Cheney* v. *Unroe*, 166 Ind. 550 [117 Am. St. Rep. 391, 77 N. E. 1041]).

█ There is neither a more wholesome nor a sounder rule of law than that which requires public officers to keep themselves in such a position as that nothing shall tempt them to swerve from the straight line of official duty. Officers ought not to be allowed to place themselves in a posi-

tion in which personal interest may come into conflict with the duty which they owe to the public. The rule which has so long prevailed is eminently just (*Stropes* v. *Greene Co.,* 72 Ind. 42).

There is no doubt but that a policeman is an officer. He is made a peace officer by section 817 of the Penal Code, and a large part of his duties are such that he must have authority to act, not as the agent for the state or city, but by virtue of the office. See Ann. Cas. 1912D, note at p. 897; 21 Cal. Jur., p. 389.

In *Olmstead* v. *New York,* 42 N. Y. Super. Ct. (10 Jones & S.) 481, it is said that the term "officer" implies "an authority to exercise some portion of the sovereign power of the state, either in making, administering or executing the laws." In *Eliason* v. *Coleman,* 86 N. C. 235, it is said: "The true test of a public office seems to be that it is a part of the administration of government, civil or military." In *People* v. *Coler,* 166 N. Y. 1 [82 Am. St. Rep. 605, 52 L. R. A. 814, 59 N. E. 716], we find that "an officer is a part of the personal force by which the state acts, thinks, determines, administers and makes effective its constitution and its laws operative."

That a policeman is an officer of a city or state and not merely an employee or agent is approved in Dillon on Municipal Corporations, fifth edition, section 1655.

Without pursuing this branch of the inquiry it might be conceded that a policeman is not an officer in every sense of the term. In other words, it is not within the scope of this opinion to announce the law that for all purposes and in all respects the position of a policeman fully meets all the standards and requirements essential to or usually inherent in the legal definition of an office. We do not attempt to determine the question. We do conclude, however, that a policeman in the discharge of his duties does stand in a relationship to the governing authority differing greatly from that of a mere employee or agent, and that relationship for many purposes is indistinguishable from and may be classified as that of a public officer. Being, as it is, so closely allied we hold that the principles herein announced have equal application to the position of policeman.

Further illustrating the attitude of our own courts on the policy of maintaining the integrity of public officials and

removing all sources of temptation, see *Moody* v. *Shuffleton*, 203 Cal. 100 [262 Pac. 1095].

It is true that nowhere in the general law or in local ordinances can we find all the duties of a police officer set forth in detail. Indeed, these duties are so varied and indefinable that we could not expect an exact and detailed outline thereof.

In the case of *Norton* v. *Shelby County*, 118 U. S. 425 [30 L. Ed. 178, 6 Sup. Ct. Rep. 1162], the court in speaking of a *de facto* officer says: "An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the officer are exercised without known appointment or election under circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to possess the power and right claimed."

While we are not dealing here with any question of an officer *de facto*, yet the language used has a striking application to the question of the powers of a police officer.

When the police from time immemorial have exercised rights under circumstances of reputation or acquiescence as are calculated to induce people, without inquiry, to submit to or invoke their action, supposing them to possess the power and right claimed, the exercise of those rights will become an integral part of the duties incident to the office.

When a police officer discovers personal property of value abandoned upon the streets of a city it is but natural and reasonable to assume that either of two things has occurred, namely, that the property has been stolen or has been lost. Indeed, in the instant case the purpose of the police, or at least one purpose as admitted, was to discover whether or not the property had been stolen. In either case, however, it is well within the duty of a police officer to make inquiry, and, pending the result of that inquiry, to assure the safety and protection of the property, which is otherwise liable to destruction or deterioration. This duty and right of the police is universally conceded to the extent that the average citizen accepts it as a matter of course, and upon the discovery of property apparently lost the first thing that suggests itself is to notify the police. And, on

the other hand, with reference to the owner of lost property, his first impulse is to advise the police of his loss and solicit their aid, and this impulse has been fostered and encouraged by the police themselves from time immemorial and in California the police departments throughout the state have justified to the fullest extent their confidence. By way of illustration, let us assume that in the streets of Palo Alto there was discovered a bicycle lying on the sidewalk with no apparent owner, and a number of citizens came upon it, and each claimed the right of a finder and the resulting right to take the bicycle into his exclusive possession—the police officer on the detail comes along and observes the situation, and thereupon declares that he will take the property and deliver the same to the city hall that the owner may recover the same. What ordinarily results? Each individual forthwith concedes and recognizes the law and the right of the officer; and this right and power inures to the policeman solely and entirely by virtue of his office and not otherwise. To uphold the contention of the plaintiff herein would be to say to a police officer, in effect, "It is your sworn duty to preserve peace and order and to protect life and property. You shall, among other duties, diligently make investigation where you have reason to believe crime has been committed, and the most common crimes are those of larceny and theft. When you find property abandoned and without an owner you shall take all necessary means to preserve and protect the same, while endeavoring to ascertain whether a public offense has been committed. If you can conclude that no crime has been done then you may retain the property, and if the true owner is not located then the property or the proceeds thereof shall belong to you personally." In view of what we have heretofore said on the question of public policy we consider this a dangerous doctrine to announce, inimical to and contrary to a sound public policy.

It was the duty of the plaintiff herein to turn into the city treasury of Palo Alto the moneys in dispute here, and failing to do so the moneys turned into court should be ordered so disposed of. Whatever right the city may have to the fund as against the original owners of the bicycles is not of concern to us here, and surely of much less concern to the plaintiff individually. The fear that the officials of

a city may not make legal or proper disposition of these funds establishes no basis for the claim of plaintiff.

Judgment reversed, with directions to enter judgment for defendant.

Tyler, P. J., and Knight, J., concurred.