BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE LONI HANCOCK, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a city council member, who serves on the board of directors of a nonprofit trust created to support the operations of a national historical park, participate in a city council decision to lease a parcel of land to a business owner from whom the council member has solicited contributions on behalf of the nonprofit trust?
 CONCLUSION
A city council member, who serves on the board of directors of a nonprofit trust created to support the operations of a national historical park, may participate in a city council decision to lease a parcel of land to a business owner from whom the council member has solicited contributions on behalf of the nonprofit trust.
 ANALYSIS
The question presented for resolution concerns a city council member who serves on the board of directors of a nonprofit trust created to support the operations of a national historical park that is located within the city's boundaries. In his capacity as a director of the trust, the council member has solicited financial contributions from various business owners, including one who proposes to lease a parcel of land from the city. We are asked whether this city council member may vote on the lease to the business owner in light of his fund-raising activities as a director of the trust. We conclude that he may do so.
We are informed that the city formed a committee in the early 1990's to oversee the design and construction of a memorial on city property -- "The Rosie the Riveter Memorial" — to honor the women who worked in the city's industrial shipyards during World War II. The project became known to the National Park Service ("NPS"), which suggested that a local nonprofit trust be organized, known as the "Rosie the Riveter Trust" ("Trust"), for the purpose of providing support and assistance to the NPS in the development and operation of a national park located within the city.[1] In support of the park proposal, the city council adopted a resolution committing the city to a partnership with the NPS to maintain and operate the park. In 2000, Congress established the Rosie the Riveter/World War II Home Front National Historical Park ("Park"). (16 U.S.C. § 410ggg.) Most of the buildings and land within the Park's boundaries are owned and maintained by the city.
Currently, the Trust has a board of directors of five members, who serve without compensation; the board consists of two city council members, a former city mayor, a member of the county board of supervisors, and a city resident. The duties of each director include participation in the Trust's annual fund-raising campaign. The Trust is a charitable organization exempt from taxation pursuant to section 501(c)(3) of the Internal Revenue Code (26 U.S.C. § 501(c)(3)).
With this background in mind, we examine whether the city council member in question may vote on the lease of city property to someone from whom he has solicited contributions for the Trust's operations. The first statutory scheme that requires consideration is the Political Reform Act of 1974 (Gov. Code, §§ 81000-91014; "Act"),[2] which prohibits public officials from participating in government decisions in which they have a financial interest (see §§ 87100; 78 Ops.Cal.Atty.Gen. 362, 368-374 (1995); 74 Ops.Cal.Atty.Gen. 82, 86 (1991); 70 Ops.Cal.Atty.Gen. 45, 46 (1987)). When a disqualifying conflict of interest exists, the Act requires that the disqualified official abstain from participating in every aspect of the decision-making process. (See Hamilton v. Town of Los Gatos (1989) 213 Cal.App.3d 1050, 1058-1059; 86 Ops.Cal.Atty.Gen. 142, 143 (2003); 61 Ops.Cal.Atty.Gen. 243, 250-255 (1978).)
The Act specifies various types of disqualifying economic interests. Section 87103 states:
 "A public official has a financial interest in a decision within the meaning of Section 87100 if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on the official, a member of his or her immediate family, or on any of the following:
 "(a) Any business entity in which the public official has a direct or indirect investment worth two thousand dollars ($2,000) or more.
 "(b) Any real property in which the public official has a direct or indirect interest worth two thousand dollars ($2,000) or more.
 "(c) Any source of income, except gifts or loans by a commercial lending institution made in the regular course of business on terms available to the public without regard to official status, aggregating five hundred dollars ($500) or more in value provided or promised to, received by, the public official within 12 months prior to the time when the decision is made.
 "(d) Any business entity in which the public official is a director, officer, partner, trustee, employee, or holds any position of management.
 "(e) Any donor of, or any intermediary or agent for a donor of, a gift or gifts aggregating two hundred fifty dollars ($250) or more in value provided to, received by, or promised to the public official within 12 months prior to the time when the decision is made. The amount of the value of gifts specified by this subdivision shall be adjusted biennially by the commission to equal the same amount determined by the commission pursuant to subdivision (f) of Section 89503.
 "For purposes of this section, indirect investment or interest means any investment or interest owned by the spouse or dependent child of a public official, by an agent on behalf of a public official, or by a business entity or trust in which the official, the official's agents, spouse, and dependent children own directly, indirectly, or beneficially a 10-percent interest or greater."
Here, the city council member in question has no financial interest or business interest that might conflict with, or be enhanced by, the proposed lease. He will not be the lessee of the city's property, nor will the Trust of which he is a director. The lessee will not be a business entity in which the council member has a direct or indirect financial interest, and the lease will not be a source of income to him. Looking at all of the circumstances as a whole, there is no potential for the proposed lease to have a material financial effect upon the council member. On these facts, the Act does not prevent him from voting upon the proposed lease. ( 87103; cf. Downey Cares v. Downey Community Development Com'n. (1987) 196 Cal.App.3d 983, 988-991 [city council member may not participate in redevelopment decisions affecting area in which member owns property and operates business]; Witt v. Morrow (1977)70 Cal.App.3d 817, 823 [agency member may not make decisions affecting nonprofit organization of which member is salaried president and attorney]; 70 Ops.Cal.Atty.Gen., supra, at p. 46 [board member may not participate in action affecting organization of which the member is salaried executive director].)
We next turn to the conflict-of-interest proscription found in section 1090, which prohibits public officers, acting in their official capacities, from making contracts in which they are financially interested. Section 1090 provides in part:
"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
If the officer is a member of a legislative body, this prohibition extends to the entire body on which he or she serves — here, the city council. When a conflict of interest exists within the meaning of section 1090, the contract is void and unenforceable even if the financially interested member refrains from participating in any of the steps involved in making the contract. (See Thomson v. Call (1985) 38 Cal.3d 633, 649; Stigall v. City of Taft (1962) 58 Cal.2d 565, 570-571.)
Section 1090 codifies the common law prohibition against "self-dealing" with respect to contracts. (See Stats. 1851, ch. 136, § 1; Stigall v. City of Taft, supra, 58 Cal.2d at p. 571; City of Oakland v. California Const. Co. (1940) 15 Cal.2d 573, 576; BreakZone Billiards v. City of Torrance (2000)81 Cal.App.4th 1205, 1230; Stockton P. . S. Co. v. Wheeler (1924) 68 Cal.App. 592, 597.) "[T]he prohibited act is the making of a contract in which the official has a financial interest." (People v. Honig (1996) 48 Cal.App.4th 289, 333.) "Put in ordinary, but nonetheless precise terms, an official has a financial interest in a contract if he might profit from it." (Ibid.; accord, People v. Gnass (2002)101 Cal.App.4th 1271, 1288, fn. 6; see BreakZone Billiards v. City of Torrance, supra, 81 Cal.App.4th at pp. 1230-1231; Fraser-Yamor Agency, Inc. v. County of Del Norte (1977) 68 Cal.App.3d 201, 212-215; Hotchkiss v. Moran (1930) 109 Cal.App. 321, 323.)[3]
Prohibited "financial interests" extend to expectations of economic benefit (People v. Honig, supra, 41 Cal.App.4th at p. 315); "a financial interest within the meaning of section 1090 may be direct or indirect and includes the contingent possibility of monetary or proprietary benefits" (id. at p. 325; see People v. Vallerga (1977) 67 Cal.App.3d 847, 865; People v. Darby (1952) 114 Cal.App.2d 412, 433, fn. 4). "[F]orbidden financial interests may be indirect as well as direct, and may involve financial losses, or the possibility of financial losses, as well as the prospect of pecuniary gain." (86 Ops.Cal.Atty.Gen. 138, 140 (2003).) All the circumstances of the transaction as a whole must be considered in determining whether a proscribed financial interest would be present in the contract. (Thomson v. Call, supra, 38 Cal.3d at p. 645; People v. Honig, supra, 48 Cal.App.4th at pp. 315, 320; People v. Watson, supra, 15 Cal.App.3d at p. 37; People v. Darby, supra, 114 Cal.App.2d at pp. 431-432.)
The term "financially interested" contained in section 1090 has been defined in jury instructions as follows:
 "The phrase `financially interested' as used in Government Code section 1090 means any financial interest which might interfere with a city officer's unqualified devotion to his public duty. The interest may be direct or indirect. It includes any monetary or proprietary benefit, or gain of any sort, or the contingent possibility of monetary or proprietary benefits. The interest is direct when the city officer, in his official capacity, does business with himself in his private capacity. The interest is indirect when the city officer, or the board of which he is a member, enters into a contract in his or its official capacity with an individual or business firm, which individual or business firm, by reason of the city officer's relationship to the individual or business firm at the time the contract is entered into, is in a position to render actual or potential pecuniary benefits directly or indirectly to the city officer based on the contract the individual or business firm has received."
This jury instruction has been approved in various contexts. (See People v. Gnass, supra, 101 Cal.App.4th at p. 1299, fn. 9; People v. Honig, supra, 48 Cal.App.4th at pp. 322-323, 332; People v. Vallerga, supra, 67 Cal.App.3d at p. 867; People v. Watson, supra, 15 Cal.App.3d at pp. 37-38; People v. Darby, supra, 114 Cal.App.2d at p. 433-436.)
Following these authorities, we find that section 1090 has no application in the situation presented. Although a lease of city property would constitute a "contract" within the meaning of section 1090 (85 Ops.Cal.Atty.Gen. 176, 177 (2002); see, e.g., 87 Ops.Cal.Atty.Gen. 92, 93 (2004) [lease of hospital facilities]; 87 Ops.Cal.Atty.Gen. 9, 11 (2004) [lease of school equipment]), the city council member in question would have no "financial interest" in the lease. He would not be the lessee of the city property; nor would the Trust be the lessee. The terms of the lease would not inure to his financial benefit; the lease would not represent "self-dealing" by him in his official and private capacities.
Because the council member is not compensated for his services as a director of the Trust, even a large donation made by the prospective lessee as a result of the solicitation for funds would not financially benefit the council member, either directly or indirectly. A large donation would, at most, advance a public interest already promoted by the city. Conversely, the council member would not be financially disadvantaged in any respect if the prospective lessee made no donation in response to the solicitation.
Accordingly, there simply would be no reason for the council member to view the lease proposal with his own financial interest in mind. In the terms of the jury instruction quoted above, the proposed lessee would not be "in a position to render actual or potential pecuniary benefits directly or indirectly to the city officer based on the contract the individual or business firm has received." An examination of all the circumstances of the transaction reveals nothing that would prevent the council member or the city council as a whole from executing the lease, notwithstanding the prior solicitation of a financial contribution for the Trust. (See BreakZone Billiards v. City of Torrance, supra, 81 Cal.App.4th at pp. 1230-1231; Hotchkiss v. Moran, supra, 109 Cal.App. at p. 323.)[4]
Our determination that section 1090 is inapplicable in the circumstances presented is firmly supported by an examination of the statutory exceptions to section 1090 that the Legislature has fashioned. Section 1091 describes certain "remote interests," and section 1091.5 identifies certain "noninterests" that fall outside the scope of section 1090. If a remote interest is present, the contract may be executed if (1) the officer discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the body's official records, and (3) the officer abstains from any participation in the making of the contract. (See 83 Ops.Cal.Atty.Gen. 246, 248 (2000); 65 Ops.Cal.Atty.Gen. 305, 307 (1982).) If a noninterest is present, the contract may be executed without the abstention of the officer or employee, and generally a noninterest does not require disclosure. (See City of Vernon v. Central Basin Mun. Water Dist. (1999)69 Cal.App.4th 508, 515; 78 Ops.Cal.Atty.Gen., supra, at pp. 369-370.) An examination of these statutory exceptions is often helpful in defining what financial interests are proscribed under the terms of section 1090. (People v. Honig, supra, 48 Cal.App.3d at pp. 317-319, 330-331; 85 Ops.Cal.Atty.Gen., supra, at pp. 36-38.)
Section 1091. 5, subdivision (a)(8), defines a noninterest as including:
"That of a noncompensated officer of a nonprofit, tax-exempt corporation, which, as one of its primary purposes, supports the functions of the body or board or to which the body or board has a legal obligation to give particular consideration, and provided further that this interest is noted in its official records.
"For purposes of this paragraph, an officer is `noncompensated' even though he or she receives reimbursement from the nonprofit, tax-exempt corporation for necessary travel and other actual expenses incurred in performing duties of his or her office."
Here, the council member is a noncompensated officer of the Trust, which is a nonprofit, taxexempt corporation. One of the main purposes of the Trust is to support the city's functions in maintaining the buildings and land within the Park's boundaries. Hence, the city council may contract with the Trust itself under the terms of section 1091.5, subdivision (a)(8), even though a council member is a Trust director. Further, even if the council member were compensated by the Trust, the city council could contract with the Trust without the council member's participation in the making of the agreement under the remote interest exception of section 1091, subdivision (b)(1) ["That of an officer or employee of a nonprofit entity exempt from taxation pursuant to Section 501(c)(3) of the Internal Revenue Code (26 U.S.C. § 501(c)(3)) or a nonprofit corporation . . ."].
If these remote interest and noninterest statutory exceptions allow the city council to contract with the Trust itself while a council member is a Trust director, it necessarily follows that no violation of section 1090 would occur if the city council were to contract with someone whose only connection to the Trust is that he or she was previously asked by the council member to make a financial contribution to the Trust.
Similarly, we find that the city council member's vote on the lease would not violate general common law principles, under which public officers are required to avoid placing themselves in positions in which personal interests may come into conflict with their duties to the public. This conflict-of-interest doctrine was explained more than 75 years ago in Noble v. City of Palo Alto (1928) 89 Cal.App. 47, 51: "A public officer is impliedly bound to exercise the powers conferred on him with disinterested skill, zeal, and diligence and primarily for the benefit of the public. [Citations.]" Under the doctrine, "[p]ublic officers are obligated, . . . [by virtue of their office], to discharge their responsibilities with integrity and fidelity." (Terry v. Bender (1956) 143 Cal.App.2d 198,206.) While common law conflicts may sometimes arise in the absence of a financial interest, there still must be some personal advantage or disadvantage at stake for the public officer. (See Clark v. City of Hermosa Beach (1996) 48 Cal.App.4th 1152, 1172 [city council member "stood to benefit personally by voting against the [condominium] project" since he had "an interest in preserving his ocean view" from his residence].) Where a conflict of interests exists, the interested official is disqualified from participating in any discussions or votes concerning the particular transaction in which he or she has the conflicting interests.
Here, we find no common law conflict because, once again, the city council member has no personal stake — financial or otherwise — in the proposed lease of the city's property. The lease will not be with the council member in his private capacity or with the Trust of which he is a director. The lease will not benefit any business entity in which he has a direct or indirect financial interest, and the lease will not be a source of income to him. (See BreakZone Billiards v. City of Torrance, supra, 81 Cal.App.4th at pp. 1232-1233 [assuming common law doctrine is viable after Woodland Hills Residents Assn., Inc. v. City Council (1980)26 Cal.3d 938, campaign contributions to council member from opponent of development did not prevent council member's vote on development under common law rule]; cf. Clark v. City of Hermosa Beach, supra, 48 Cal.App.4th at p. 1172; Noble v. City of Palo Alto, supra, 89 Cal.App. at pp. 51-54.)
Moreover, a common law prohibition against a particular conflict of interest may be abrogated by the Legislature. (See Civ. Code, § 22.2 ["The common law of England, so far as it is not repugnant to or inconsistent with the . . . laws of this State, is the rule of decision in all the courts of this State"]; American Canyon Fire Protection Dist. v. County of Napa (1983) 141 Cal.App.3d 100, 104; McClain v. County of Alameda (1962) 209 Cal.App.2d 73, 79; 82 Ops.Cal.Atty.Gen. 201, 204 (1999); 81 Ops.Cal.Atty.Gen. 344, 345-346 (1998); 78 Ops.Cal.Atty.Gen. 60, 62-63 (1985).) Here, the common law has been abrogated with respect to the financial interest "of a noncompensated officer of a nonprofit, tax-exempt corporation . . . ." (§ 1091.5, subd. (a)(8).) Since the Legislature has, in effect, authorized the lease agreement under this "noninterest" exception, the common law prohibition may not be applied in a manner inconsistent with this statute.
Accordingly, we conclude that a city council member, who serves on the board of directors of a nonprofit trust created to support the operations of a national historical park, may participate in a city council decision to lease a parcel of land to a business owner from whom the council member has solicited contributions on behalf of the nonprofit trust.[5]
[1] We are informed that virtually every national park is paired with a nonprofit "partner" organization, and that the NPS considers the formation of such an organization to be an important indication of local commitment to the long-term success of a proposed national park.
[2] All references hereafter to the Government Code are by section number only.
[3] In 1963, the term "financially" was added to section 1090. (Stats. 1963, ch. 2172, § 1; see People v. Gnass, supra, 101 Cal.App.4th at p. 1288, fn. 4; People v. Honig, supra, 48 Cal.App.4th at p. 323, fn. 13; People v. Watson (1971) 15 Cal.App.3d 28, 34.) The amendment "made explicit that the prohibition in the section against conflict of interest is restricted to financial interest, and the possibility that the section might apply to some other type of interest has been eliminated." (People v. Watson, supra, 15 Cal.App.3d at p. 34, fn. omitted.) Cases interpreting the term "interest" prior to 1963 are thus not necessarily authoritative. (People v. Gnass, supra, 101 Cal.App.4th at p. 1288, fn. 4; People v. Honig, supra, 48 Cal.App.4th at p. 313.)
[4] We note that the phrase "any contract made by them" contained in section 1090 has been broadly defined to include various activities leading up to execution of the contract, including preliminary discussions, negotiations, compromises, reasoning, and planning. (See Stigall v. City of Taft, supra, 58 Cal.2d at pp. 569- 571; City Council v. McKinley (1978) 80 Cal.App.3d 204,212-213; People v. Sobel (1974) 40 Cal.App.3d 1046,1052; Millbrae Assn. for Residential Survival v. City of Millbrae (1968) 262 Cal.App.2d 222, 237; Schaefer v. Berinstein (1956) 140 Cal.App.2d 278, 291-292; 86 Ops.Cal.Atty.Gen., supra, at p. 145, fn. 3; 85 Ops.Cal.Atty.Gen. 34, 35 (2002); 80 Ops.Cal.Atty.Gen. 41, 42-44 (1997).)
[5] We have not been presented with any facts indicating a violation of criminal law. (See, e.g., Pen. Code, §§ 68, subd. (a) [accepting bribe to influence official action]; 70, subd. (a) [accepting "emolument, gratuity, or reward," or promise thereof, to perform official act]; 165 [receiving or agreeing to receive bribe to influence "official vote, opinion, judgment, or action"]; cf. People v. Diedrich (1982)31 Cal.3d 263, 271-275; People ex rel. Foundation for Taxpayer Consumer Rights v. Duque (2003)105 Cal.App.4th 259, 266; BreakZone Billiards v. City of Torrance, supra, 81 Cal.App.4th at pp. 1230, 1233, fn. 20.)