IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher M. Lust and        :
Nicole M. Schmidt Lust,        :
          Petitioners    :
                    :
        v.            :
                    :
Commonwealth of Pennsylvania,  :   No. 645 F.R. 2011
          Respondent   :   Submitted: October 7, 2015

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
            HONORABLE BERNARD L. McGINLEY, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE MARY HANNAH LEAVITT, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                   FILED: December 17, 2015

       Christopher M. Lust (Lust) and Nicole M. Schmidt Lust (Mrs. Lust) (collectively, Taxpayers), pursuant to Pennsylvania Rule of Appellate Procedure 1571(i), filed exceptions to this Court's January 9, 2015 panel opinion and order affirming the Board of Finance and Revenue's (BFR) August 23, 2011 order. In this Court's initial decision, the Court concluded that Taxpayers failed to prove that they were not Pennsylvania residents under the Tax Reform Code of 1971 (Code)[1] during the 2005 tax year. After review, this Court, *en banc*, overrules the exceptions.[2]

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004.

[2] By *per curiam* order dated June 17, 2014, this Court granted Taxpayers' unopposed motion to seal the record and exhibits. This opinion does not disclose confidential information contained therein, such as social security numbers, addresses and income.

The underlying facts are disputed and set forth in the initial panel opinion. We summarize them here.

On July 24, 2006, Taxpayers filed an initial personal income tax (PIT) return for 2005 (2005 Return) with the Pennsylvania Department of Revenue (Revenue) identifying Avalon, New Jersey as their current place of residence, and designating themselves part-year Pennsylvania residents for the period January 1, 2005 through October 5, 2005. In the 2005 Return, Taxpayers reported a gross tax due of $155,076.00 with credits totaling $183,272.00,[3] resulting in an overpayment of $28,196.00. By September 1, 2006 letter, Revenue notified Taxpayers that it required additional information. On September 27, 2006, Taxpayers' certified public accountant responded to Revenue's letter with various documentation and the following explanation: "In the Spring of 2005, [Taxpayers] wed. . . . Prior to the marriage[,] Mrs. Lust resided[] (domiciled)[] in New York and Mr. Lust resided[] (domiciled)[] in Pennsylvania. . . . [Taxpayers] moved their respective residences[] (domicile)[] to New Jersey at the beginning of October, 2005." Original Record (O.R.) at 146. On October 31, 2006, after assessing an estimated tax penalty of $1,464.36 and applying $1,355.22 to an outstanding liability from 2004, Revenue issued Taxpayers a $25,377.42 refund.

On October 14, 2009, almost three years later, Taxpayers filed an amended 2005 Pennsylvania tax return stating that they were not Pennsylvania residents for any part of 2005, reporting $0.00 of taxable income for the 2005 tax year and requesting a $93,283.00 PIT refund, claiming:

---

[3] Taxpayers attached a copy of their 2005 New York State Nonresident and Part-Year Resident Tax Return (New York Return) in support of a credit representing $63,272.00 in taxes they paid in New York. The New York Return identifies Taxpayers as nonresidents. At some point after Taxpayers filed their New York Return, the New York State Department of Taxation and Finance conducted a field audit and concluded that Taxpayers were domiciled in New York State/City from January 1, 2005 to July 31, 2005.

> Taxpayers are amending their tax return to exclude wages and investment income from gross income that were earned while the taxpayers were tax residents of New York and New Jersey, and not Pennsylvania. The taxpayers were part[-]year residents of New York and New Jersey for the full tax year, and nonresidents of Pennsylvania. Therefore they are filing a refund claim for overpaid Pennsylvania income taxes.

O.R. at 79. Revenue determined that Taxpayers were not entitled to a refund. Taxpayers filed a Petition for Review with the BFR. By August 23, 2011 order, the BFR denied Taxpayers' Petition for Review. Taxpayers appealed to this Court, and a panel of this Court (Panel) affirmed the BFR's decision on appeal. Taxpayers' exceptions followed.[4]

Taxpayers argue that the Panel erred in its decision because it "artificially clung to [] Lust's signature on the initial [Pennsylvania] tax returns and letter from [] Lust's accountant . . . and **held** that although **[Taxpayers] were not meaningfully present** in Pennsylvania and properly amended the initial tax return [Taxpayers] were nonetheless irreversibly committed to the statement of residency in the initial return." Taxpayers' Br. at 4 (emphasis added).[5] Further, Taxpayers assert

---

[4] This Court has explained:

> [I]n tax appeals from the [BFR], this [C]ourt functions as a trial court. As fact finder, this [C]ourt may resolve factual disputes, but where there are no factual disputes, this [C]ourt shall adopt the parties' stipulation of facts. Our scope of review in a tax appeal is limited to the construction, interpretation and application of a tax statute in relation to a given set of facts. Exceptions to a determination by this [C]ourt filed pursuant to [Pennsylvania Rule of Appellate Procedure] 1571(i) have the effect of an order granting reconsideration.

*TCI Ne., Inc. v. Commonwealth*, 676 A.2d 1271, 1274 (Pa. Cmwlth. 1996) (citations omitted).

[5] Importantly, the Panel **did not**, as Taxpayers contend, "h[o]ld that . . . [Taxpayers] were not meaningfully present in Pennsylvania . . . ." Taxpayers' Br. at 4. Instead, the Panel held that in light of the documents Taxpayers had previously filed, and in the absence of substantial credible evidence demonstrating New York residency, Taxpayers did not meet their burden. It is Taxpayers who have asserted that they were not meaningfully present in Pennsylvania. Further, contrary to Taxpayers' statement, the Panel did not hold that the initial return was "properly amended . . . ." *Id.*

3

that the Panel improperly rejected Taxpayers' evidence and disregarded the established test for determining residency.

The Code requires that every "resident individual" pay PIT on all income received during the taxable year, and every "nonresident individual" pay PIT on income received from sources within the Commonwealth during the taxable year. 72 P.S. § 7302.[6] Section 301(p) of the Code defines a "[r]esident individual" as

> an individual who is domiciled in this Commonwealth unless he maintains no permanent place of abode in this Commonwealth and does maintain a permanent place of abode elsewhere and spends in the aggregate not more than thirty days of the taxable year in this Commonwealth; or who is not domiciled in this Commonwealth but maintains a permanent place of abode in this Commonwealth and spends in the aggregate more than one hundred eighty-three days of the taxable year in this Commonwealth.

72 P.S. § 7301(p) (emphasis omitted).[7] A "[n]onresident individual" is defined as "any individual who is not a resident of the Commonwealth." 72 P.S. § 7301(m) (emphasis omitted).

Section 101.3 of Revenue's Regulations states, in pertinent part:

> (a) In the case of an individual domiciled in this Commonwealth, the maintenance of a permanent place of abode in this Commonwealth is alone sufficient to make him a resident for tax purposes. Even though he remains outside this Commonwealth for the entire year, the 183-day rule applies only to taxpayers who are not domiciled in this Commonwealth. Reference should also be made to [Section] 101.5 [of Revenue's Regulations] (relating to rules for days within and without the Commonwealth).

> (b) A domicile, once established, continues until the individual in question moves to a new location with the bona fide intention of making his fixed and permanent home there. No change of domicile results from a removal

---

[6] Section 302 of the Code was added by Section 8 of the Act of August 4, 1991, P.L. 97.

[7] Added by Section 4 of the Act of August 31, 1971, P.L. 362.

4

to a new location if the intention is to remain there only for a limited time; this rule applies even though the individual may have sold or disposed of his former home. The burden shall be upon the individual asserting a change of domicile to show that the necessary intention existed. In determining an individual's intention in this regard, his declarations shall be given due weight, but they may not be conclusive if they are contradicted by his conduct. The fact that an individual registers and votes in one place is important but not necessarily conclusive, especially if the facts indicate that he did this merely to escape taxation in some other place.

. . . .

(d) An individual may have only one domicile. If he has two or more homes, his domicile shall be the one which he regards and uses as his permanent home. In determining his intentions in this matter, the length of time customarily spent at each location shall be important but not necessarily conclusive. An individual who maintains a permanent place of abode in this Commonwealth is taxable as a resident even though he may be domiciled elsewhere.

61 Pa. Code § 101.3.

Citing case law and Revenue's Regulations, Taxpayers unabashedly argue in their brief that this Court should not trust Taxpayers' **own claims** of Pennsylvania residency to determine their residency for the purpose of determining their PIT liability, "when all evidence of [T]axpayer[s'] actual activities and whereabouts contradicts those statements." Taxpayers' Br. at 3. In other words, Taxpayers contend the Panel erred because it relied on Taxpayers' own proclamation of Pennsylvania residency made when Taxpayers filed their original tax returns, rather than Taxpayers' directly contradictory representations made in their amended tax return and subsequent litigation. Despite the significant record evidence which includes Pennsylvania and New York tax returns and other Taxpayer documents reflecting Pennsylvania residency, Taxpayers assert that "[Taxpayers'] *acts* demonstrated domicile in New York for tax year 2005. [According to Taxpayers,]

5

[i]t is this **actual evidence** of Taxpayer[s'] **activities and whereabouts** that controls, and requires a finding that Taxpayer[s are] not subject to Pennsylvania PIT." Taxpayers' Br. at 3 (bold emphasis added).

Taxpayers fault the Panel for "subjecting nonresident [Taxpayers] to PIT[,]" "fashion[ing] their own standard to achieve a desired result" and failing to "cite to or rely on any evidence showing that [Taxpayers] were present in Pennsylvania in any meaningful way in 2005." Taxpayers' Br. at 4. However, we find no error in the Panel's analysis, since "**a party appealing from a denial** of a tax refund by the [BFR] **has the burden of proof** in a *de novo* proceeding before this Court." *Armco, Inc. v. Commonwealth*, 654 A.2d 1191, 1193 (Pa. Cmwlth. 1993) (italics and bold emphasis added). Moreover, Section 101.4 of Revenue's Regulations provides, in relevant part:

> (a) An individual domiciled in this Commonwealth shall be a resident for purposes of this article for a specific taxable year, unless for that year he satisfies all three of the following requirements:
>
> > (1) Maintains no permanent place of abode in this Commonwealth during the year.
> >
> > (2) Maintains a permanent place of abode elsewhere during the entire year.
> >
> > (3) Spends in the aggregate not more than 30 days of the taxable year in this Commonwealth.
>
> . . . .
>
> (c) **Where an individual claims to be a nonresident for any taxable year, the burden shall be upon him to show that during that year he satisfied all three of the requirements set forth in subsection (a).**

61 Pa. Code § 101.4 (emphasis added). Thus, contrary to Taxpayers' protestations, the Panel was not required to cite to or rely on evidence to conclude that Taxpayers

6

**were** Pennsylvania residents. Instead, having appealed from the BFR's denial of their refund request, it was **Taxpayers'** burden to demonstrate that they were **not** Pennsylvania residents during 2005.

We consider **Taxpayers' acts**:

1) Lust **signed and filed** a 2004 **Pennsylvania PIT return dated August 15, 2005 listing** Lust's **home address** as **Pittsburgh, Pennsylvania**;[8]

2) Lust **signed and filed** a 2004 **New York** State **Nonresident** and **Part-Year Resident Return dated August 15, 2005 listing** Lust's **home address** as **Pittsburgh, Pennsylvania**;

3) Taxpayers **signed and filed** the 2005 Return dated July 24, 2006, which listed Taxpayers' home address as Avalon, New Jersey, **and claimed partial-year Pennsylvania residency from January 1, 2005 through October 5, 2005**;

4) Taxpayers **attached to their 2005 Return,** a 2005 **New York** State **Nonresident** and **Part-Year Resident Return** dated July 17, 2006, listing Avalon, New Jersey as their home address;

5) For Lust's **August 2, 2005** purchase of property in Avalon, New Jersey, Lust **executed a deed listing Pittsburgh, Pennsylvania as his home address**;

6) In response to Revenue's September 1, 2006 letter, Taxpayers **caused and/or permitted Taxpayers' certified public accountant to send the September 27, 2006 letter** to Revenue on their behalf, "**relative to the [T]axpayers' part year Pennsylvania resident individual tax return**[.]" O.R. at 146. The September 27, 2006 letter unambiguously informed Revenue that Lust was domiciled in Pennsylvania until the beginning of October in 2005. Although Lust was carbon-copied

---

[8] At Lust's February 14, 2014 deposition, Taxpayers objected to the relevance of this document; however, Lust's 2004 PIT return is clearly relevant as it reflects Lust's home address in 2005. Further, the filing of the 2004 PIT return in which Lust claimed a resident credit, directly contradicts Lust's later testimony that he was a New York State resident as early as 2000.

on the letter, **there is no record evidence that upon receiving a copy of the letter he notified his accountant that the information contained therein was incorrect and/or directed his accountant to notify Revenue accordingly;**[9]

7) In response to Revenue's September 1, 2006 letter requesting additional information, Lust **caused** his New York-based employer **to send a September 26, 2006 letter to Revenue** verifying Lust's New York wages for the period January 1, 2005 to October 5, 2005.

8) Lust **held a Pennsylvania driver's license in 2005;**[10] and,

9) **Almost three years** after filing their initial return and representing to Revenue that they were Pennsylvania residents during 2005, **Taxpayers caused to be filed** an amended 2005 PIT return, **directly contradicting those representations.**

Despite these acts, Taxpayers urge this Court to consider Taxpayers' activities and whereabouts in New York during 2005. Taxpayers' Br. at 3. This evidence of Taxpayers' alleged New York activities is not, as Taxpayers contend, overwhelming evidence of Taxpayers' New York residency. *Id.* Rather, Taxpayers' evidence consists of Lust's deposition testimony, a calendar Lust **prepared,** a deed to Lust's New York apartment (N.Y. Deed) executed in 2004 and listing a New York address for Lust, and an undated document titled "Explanation of Adjustments,"

---

[9] At Lust's deposition, Taxpayers voiced a hearsay objection to the admission of the September 27, 2006 letter. This Court has explained, "the admission of a party is an exception to the hearsay rule and is competent to sustain a finding of fact. Statements made by an agent, employee or other representative of a party are admissible as evidence if the representative had express or implied authority to make them." *Borough of Grove City v. Unemployment Comp. Bd. of Review*, 928 A.2d 371, 374 (Pa. Cmwlth. 2007) (citation omitted). The letter, prepared by Taxpayers' certified public accountant, the same individual who prepared Taxpayers' PIT return, certainly had implied authority to make such representations.

[10] Section 250(2) of the New York State Vehicle and Traffic Law (in effect in 2005), N.Y. Veh. & Traf. Law § 250(2), provides that a nonresident driver who becomes a New York resident must obtain a New York State driver's license within 30 days of becoming a resident.

which appears to be from the New York State Department of Taxation and Finance (N.Y. Department) stating that, "[a]s a result of a field audit, we have determined that you were domiciled in New York State/City during Jan[uary] 1, 2005 – July 31, 2005." O.R. at 81.[11]

Taxpayers claim that the Panel subjected them, **as nonresidents**, to PIT and further criticize the Panel as ignoring the reality of their actual domicile during the relevant periods, arguing that "Taxpayer cannot be simultaneously domiciled in two states, and Taxpayer's activity in 2005 did not even **remotely** give rise to a domicile in Pennsylvania." Taxpayers' Br. at 2 (emphasis added). Importantly, the Panel **did not find** that Taxpayers were nonresidents. In fact, **it was Taxpayers** who, during the relevant period, **painted a very clear picture depicting their Pennsylvania residency** when they filed Pennsylvania tax returns claiming Pennsylvania residency, nonresident New York state tax returns, completed other documents using a Pennsylvania home address and permitted their accountant to expressly represent Lust's Pennsylvania residency to Revenue. If Taxpayers' alleged 2005 New York domicile was as clear as Taxpayers assert – that they lived and worked in New York and Lust "earned no income in Pennsylvania, performed no work in Pennsylvania, had no clients in Pennsylvania and did not visit Pennsylvania for any business purpose" and Taxpayers' conduct "did not even remotely give rise to domicile in Pennsylvania" - there would simply have been **no** reason for anyone, particularly Taxpayers or their accountant, to believe that Taxpayers should and in fact did file **Pennsylvania** tax returns and claim New York State **nonresidency**. Taxpayers' Br. at 2.

---

[11] Taxpayers contend that the Panel ignored their "*acts*" which allegedly "demonstrated domicile in New York for tax year 2005." Taxpayers' Br. at 3. The Panel's opinion clearly reflects that it did not ignore the evidence, but instead, doubted the credibility of Taxpayers' witness and the reliability of Taxpayers' evidence.

9

Taxpayers further contend that "[t]he Panel acknowledged that [Taxpayers'] evidence was competent and supporting [Taxpayers'] status as New York residents. The Panel still veered entirely off the legal standard by **rejecting the only evidence of [Taxpayers'] whereabouts and activities during 2005**." Taxpayers' Br. at 4-5 (citation omitted; emphasis added). Taxpayers' claim that the Panel acknowledged that Taxpayers' evidence "was competent and supporting [Taxpayers'] status as New York residents" is not supported by the Panel decision. Taxpayers' Br. at 5. In fact, the Panel found that "Taxpayers' amended 2005 personal income tax return, filed approximately 3 years later, **Lust's self-serving tax calendar and selectively-evasive deposition testimony** given approximately 9 years after the tax year at issue **[were] of dubious value. As fact finder, [it did] not find Lust's testimony credible.**"[12, 13] Panel Op. at 8 (emphasis added). The Panel further determined that the calendar, which Lust purportedly created after a review of various credit card statements and other receipts, was unreliable.[14]

---

[12] On direct examination, Lust testified in meticulous detail as to numerous facts supporting his 2005 New York residency arguments. However, on cross-examination, Lust was repeatedly unable to remember critical and potentially damaging facts, declined to identify several documents that he purportedly signed and filed, and refused to confirm information contained therein. In light of his testimony claiming New York residency during 2005 (contradicting the representations made in his 2005 Return), Lust explained only that his filing of the 2005 Return resulted from poor tax advice.

[13] "**The finder of fact is sole judge of credibility and is free to believe all, part, or none of the evidence.**" *In re Funds in Possession of Conemaugh Twp. Supervisors*, 753 A.2d 788, 790 (Pa. 2000) (emphasis added). *See also Commonwealth v. Roux*, 350 A.2d 867, 870 n.3 (Pa. 1976) ("**[I]t is well-settled that the finder of fact may believe all or a part of or none of the testimony of any witness**") (emphasis added). *See also*, *Albright v. State Emps. Ret. Sys.*, 500 A.2d 522, 523 (Pa. Cmwlth. 1985) ("Resolutions of credibility are within the province of the . . . fact finder and such resolution does not constitute capricious disregard of competent evidence.")

[14] The record does not include Lust's credit card statements and receipts which Lust allegedly used to create the calendar. Taxpayers claim that "[t]he Commonwealth has never . . . requested to examine the underlying documents[.]" Taxpayers' Br. at 5. It is **Taxpayers'** burden to demonstrate that they were not Pennsylvania residents in 2005. If Taxpayers believed that the credit card statements and receipts would help to corroborate Lust's testimony and demonstrate the calendar's accuracy, it was Taxpayers' responsibility to offer those documents into evidence.

Taxpayers had the burden to prove by credible evidence that they were not Pennsylvania residents. *Armco, Inc.* Lust, Taxpayers' only witness, was deemed not credible, and the calendar he created was not supported by any documentary evidence. Taxpayers' other evidence was also not convincing.[15] Taxpayers disingenuously argue that "[t]he Panel cannot **reject the established legal test**, and craft their [sic] own, to achieve a desired result of penalizing a Taxpayer whom they [sic] may perceive to be forum shopping." Taxpayers' Br. at 5 (emphasis added). Relying on a Revenue brochure, Taxpayers argue that "[a]lthough [Revenue] has set forth twenty-nine factors to assist in determining residency, it appears the Panel chose to invent and consider new factors." Taxpayers' Br. at 5. The Panel did not reject "the established legal test," nor did it "invent and consider new factors." *Id.* Instead it concluded, as do we, that Taxpayers failed to produce credible substantial evidence to support their position[16] and thus, Taxpayers did not meet their burden.[17]

---

[15] The N.Y. Deed executed in 2004 reflecting Lust's ownership of New York property, does not demonstrate New York residency for the 2005 tax year. In addition, the "Explanation of Adjustments" from the N.Y. Department does not identify the documents or other information upon which the N.Y. Department relied, or the manner in which it reached its conclusion in performing the field audit, and thus, is not credible evidence.

[16] Taxpayers also claim that the Panel "erred in giving any weight to the length of this dispute." Taxpayers' Br. at 5. The Panel considered numerous factors in determining the **accuracy and reliability** of the evidence presented, including the fact that the documentary evidence supporting Taxpayers' Pennsylvania residency was created closer in time to the 2005 tax year than Lust's testimony which was given approximately nine years after the tax year at issue. "It is axiomatic that statements made 'closer in time' to the incident in question are inherently more reliable." *Divilly v. Port Auth. of Allegheny Cnty.*, 810 A.2d 755, 758 (Pa. Cmwlth. 2002). Further, although Taxpayers claim that Taxpayers' calendar was based on "airline bookings, calendar entries and receipts[] issued contemporaneously with these activities in 2005[,]" the documents on which the calendar was allegedly based are not in the record. Taxpayers' Br. at 5.

[17] In their Amended Reply Brief, Taxpayers also assert that:

> The Commonwealth does not even attempt to argue that Mrs. Lust, who is equally impacted by the Court's ruling, had any meaningful conduct or presence in Pennsylvania. No such evidence exists. The Commonwealth offers no explanation why Mrs. Lust's residence and activities should be ignored. All evidence of [Mrs. Lust's]

11

For all of the above reasons, Taxpayers' exceptions are overruled.


_____
ANNE E. COVEY, Judge

---

whereabouts and activities in the period at issue points to New York residency.

Taxpayers' Amended Reply Br. at 2. As previously discussed, Taxpayers had the burden to demonstrate that they were not Pennsylvania residents at the time in question. The Panel found that Lust's testimony lacked credibility and Taxpayers' other evidence was less than convincing. Notably, Mrs. Lust did not testify, and accordingly, this Court did not have the opportunity to consider her testimony.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher M. Lust and        :
Nicole M. Schmidt Lust,        :
             Petitioners    :
                       :
        v.             :
                       :
Commonwealth of Pennsylvania,   :   No. 645 F.R. 2011
             Respondent   :

## O R D E R

AND NOW, this 17th day of December, 2015, Christopher M. Lust and Nicole M. Schmidt Lust's exceptions to this Court's opinion and order in *Lust v. Commonwealth* (Pa. Cmwlth. No. 645 F.R. 2011, filed January 9, 2015) are overruled. Judgment is entered in favor of the Commonwealth.

                               _____
                               ANNE E. COVEY, Judge